Jonathan Shub (NJ Bar # 317842020)
Kevin Laukaitis (*Pro Hac Vice* to file)
**SHUB LAW FIRM LLC**
134 Kings Hwy. E., 2nd Floor
Haddonfield, NJ 08033
Phone: (856) 772-7200
Fax: (856) 210-9088
Email: jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Putative Class*
(Additional counsel on signature page)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VICTORIA SIDLE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAKEFERN FOOD CORP.,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Victoria Sidle ("Plaintiff"), by and through her undersigned counsel, Shub Law Firm LLC, and Sheehan & Associates, P.C., on behalf of herself and all other persons similarly situated, brings this Class Action Complaint against Wakefern Food Corp. ("Wakefern" or "Defendant"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, investigations conducted by her attorneys.

## NATURE OF THIS CASE

1. Wakefern Food Corp. ("Wakefern" or "Defendant") operates over three hundred ShopRite supermarkets in Connecticut, Delaware, Maryland, New Jersey, New York, and Pennsylvania.

2. Defendant manufactures, distributes, markets, labels and sells unsweetened almondmilk under its Wholesome Pantry brand purporting to be flavored exclusively and/or predominantly from vanilla beans and taste like vanilla ("Product").

3. Unfortunately for consumers, the Product is not flavored mainly from vanilla beans and as a result, does not taste like vanilla.

4. The relevant front label representations include "Vanilla," "Unsweetened Vanilla," pictures of cured vanilla beans and a vanilla flower and "Almondmilk."



5. The representation as "Vanilla" is false, deceptive and misleading because the Product contains fake, artificial vanilla which provides the vanilla taste, and the amount of real vanilla, if any, is trace or *de minimis*.

6. Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

7. The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for true vanilla flavorings.

8. The vanilla bean is not consumed by itself – it is heated in the sun for weeks until being soaked in alcohol solution and its flavor constituents extracted (vanilla extract).

9. The popularity of vanilla in the 19th century led to the isolation of the most predominant flavor component, vanillin.

10. Sensory evaluation of synthetic vanillin is mainly sweet, with a lackluster "chemical-like" taste and odor because it lacks the other molecules in vanilla.

11. This availability of low-cost vanillin resulted in foods purporting to contain vanilla, but either contained no vanilla or a trace or *de minimis* amount, boosted by synthetic vanillin.

12. Consumers would buy foods labeled as "vanilla" only to later discover they lacks the richness and layered taste provided from vanilla beans.

13. However, vanillin separated from the rest of the vanilla bean does not constitute vanilla flavor.

14. The characterizing notes of vanillin must be accompanied by other compounds to produce the familiar flavor and aroma consumers are accustomed to as vanilla.

15. Vanilla's unique and complex flavor is due to the many odor-active compounds such as acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls,

shown in the table below for a sample of vanilla extract.

16. which can identify the range of volatile compounds responsible for vanilla's flavor with minimal to no degradation.

17. The benefit of such an approach is the focus on signals generated and comparison with a known authentic sample.

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guiaicol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78413588 | Total | 100.0000 |

18. While vanillin (MS Scan # 759, 77.4301 Peak Area %) plays a significant role, it contributes less than one-third of the overall flavor/aroma impact of vanilla.

19. Methyl cinnamate (MS Scan # 751) and cinnamyl alcohol (MS Scan # 676, 0.0185)

4

provide distinct cinnamon and creamy notes to vanilla.

20. P-cresol (MS Scan # 415, 0.0247) contributes flavor notes described as woody and spicy.

21. Acetovanillone (MS Scan # 839, 0.0476) provides a sweet, honey note.

22. P-hydroxybenzoic acid (MS Scan # 832, 0.2867) and vanillic acid (MS Scan # 892, 1.2120) are significant phenolic compounds which contribute to vanilla's aroma.

23. 4-methoxybenzaldehyde (p-anisaldehyde) (MS Scan # 631, 0.0049) provides creamy flavor notes to vanilla.

24. 4-methoxybenzyl alcohol (p-anisyl alcohol) (MS Scan # 653, 0.0679) provides floral notes.

25. Consumer and industry groups have long sought to prevent the deceptive practice where consumers are sold a food flavored as "vanilla" only to discover too late it lacks the richness and layered taste only provided by flavor from vanilla beans.

26. The earliest efforts to prevent fraud in vanilla products was the U.S. Pharmacopeia standard, which required a specific weight of vanilla beans as the source for vanilla extract.

27. The focus was on the weight of actual vanilla beans, because this would prevent companies from adding vanillin to a small amount of vanilla beans.

28. Consumer deception continued into the 20th century, and companies regularly deceived consumers by labeling their foods as flavored with "vanilla" despite containing only vanillin with caramel coloring.

29. Congress, with the aid of the vanilla industry, authorized regulations to prevent this deceptive labeling of vanilla flavored foods.

30. For over fifty (50) years, companies adhered to these industry standards.

31. This meant consumers were informed about foods that purported to be flavored as "vanilla" because they were identified as imitation or artificially flavored.

32. When a food was labeled as "vanilla" without qualification, consumers understood that the flavoring was only from the ingredient of vanilla beans.

33. These regulations effectively established custom and practice so that consumers' experience has primed them to infer from a product's labeling whether the flavor source was entirely from the characterizing vanilla bean ingredient or not.

34. In early 2018, in response to reports of a surge in fraudulent vanilla flavored foods, the flavor industry – The Flavor and Extract Manufacturers Association of the United States or "FEMA" – urged companies to return to truthfully labeling vanilla foods so consumers would not be misled by artificial vanilla flavors where foods were labeled only with "vanilla." *See* John B. Hallagan and Joanna Drake, FEMA, "[Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.](#)," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").

35. Based on the term "Vanilla" and the absence of any qualifying terms, reasonable consumers, and Plaintiffs, expected the Product's vanilla taste to be only from vanilla beans.

36. Though the Product's front label only references "Vanilla," the ingredient list does not clarify and disclose to consumers that its "vanilla" taste comes predominantly from non-vanilla sources, since the flavoring is declared as "Natural Flavor."



**INGREDIENTS:** ALMONDMILK (FILTERED WATER, ALMONDS), NATURAL FLAVOR, SEA SALT, GELLAN GUM, XANTHAM GUM, SUNFLOWER LECITHIN, CALCIUM CARBONATE, VITAMIN E ACETATE, ZINC GLUCONATE, VITAMIN A PALMITATE, VITAMIN B12, VITAMIN D2.

37. Analysis of the Product reveals an abnormal excess of vanillin (MS Scan # 998, 67.074 PPM) relative to the amount and presence of the key odor-active compounds in authentic vanilla, which is a strong indicator it contains vanillin from non-vanilla sources.

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 140 | 6787 | 1-butanol | 0.024 |
| 272 | 14332 | acetic acid | 0.051 |
| 426 | 2924795 | 1,2-propylene glycol | 10.310 |
| 549 | 2343 | benzaldehyde | 0.008 |
| 569 | 10120 | hexanoic acid | 0.036 |
| 579 | 2858 | octanal | 0.010 |
| 589 | 2473 | 2-ethyl-6-methylpyrazine | 0.009 |
| 674 | 1711 | 2-acetyl pyrrole | 0.006 |
| 685 | 6197 | guiaicol | 0.022 |
| 689 | 11025 | nonanal | 0.039 |
| 707 | 2479 | ethyl heptanoate | 0.009 |
| 729 | 4964123 | maltol | 17.499 |
| 747 | 48454 | octanoic acid | 0.171 |
| 754 | 54573 | benzoic acid | 0.192 |
| 792 | 4361 | decanal | 0.015 |
| 803 | 283680 | naphthalene-d8 (internal standard) | 1.000 |
| 826 | 8445 | hydroxy methyl furfural (HMF) | 0.030 |
| 839 | 209575 | nonanoic acid | 0.739 |
| 883 | 13564 | 2,4-decadienal | 0.048 |
| 900 | 3343 | glyceryl triacetate (Triacetin) | 0.012 |
| 906 | 22914 | 2,4-decadienal | 0.081 |
| 927 | 29621 | decanoic acid | 0.104 |
| 944 | 319009 | piperonal | 1.125 |
| 998 | 19027486 | vanillin | 67.074 |
| 1013 | 38163 | undecanoic acid | 0.135 |
| 1034 | 18520 | vanillyl ethyl ether | 0.065 |
| 1087 | 5468 | vanillyl acetate | 0.019 |
| 1096 | 142702 | lauric acid | 0.503 |
| 1125 | 2579 | dihydroactinolide | 0.009 |
| 1185 | 13251 | piperonal, propylene glycol cyclic acetal | 0.047 |
| 1213 | 101427 | a thiamine type vitamin | 0.358 |
| 1440 | 66231 | palmitic acid | 0.233 |
| | | Total (excluding internal standard) | 98.981 |

38. For instance, the Product's flavoring fails to reveal detectable levels of methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, 4-methoxybenzaldehyde (p-anisaldehyde), 4-methoxybenzyl alcohol (p-anisyl alcohol) and vanillic acid, even though these compounds were analyzed for.

39. This means that the Product *may* contain a trace or de minimis amount of vanilla, but this is boosted by synthetic vanillin from wood pulp or petroleum derivatives.

40. Therefore, the representation "Vanilla" is false, deceptive and misleading.

41. First, consumers expect the designation of vanilla without qualifying terms – "flavored," "other natural flavors" – to mean the flavor source is exclusively and/or predominantly from vanilla beans.

42. Most products sold today contain such statements, so their absence is notable to consumers.

43. Second, because vanillin is responsible for less than one-third of the overall flavor/aroma impact of vanilla, it is false and misleading to describe the Product's taste as "vanilla" because it lacks detectable level of the odor-active compounds that are critical to the expected vanilla taste.

44. Third, the representation of "vanilla" is misleading because the Product contains added vanillin from non-vanilla sources.

45. Natural vanillin is only from vanilla beans, which means vanillin from non-vanilla sources is artificial.

46. According to the legal counsel for FEMA, John Hallagan, a food such as almondmilk that purports to taste like vanilla must disclose the presence of the artificial flavor, vanillin.

47. Hallagan provides an example of a "vanilla-tasting cookie (vanilla is the

characterizing flavor)" which contains some vanilla and added vanillin.

48. Since vanillin is characterizing for vanilla, "the labeling for the cookie on the principal display panel must indicate" it is artificially flavored because it contains vanillin not from vanilla beans.[1]

49. Likewise, Defendant's Unsweetened Almondmilk is labeled as vanilla even though it contains vanillin not from vanilla beans, which means it should be labeled as "artificially flavored."

50. Consumers expect to be told the Product is artificially flavored because vanilla's taste is not synonymous with vanillin.

51. Vanillin is also much cheaper than vanilla, and it is highly processed using chemicals.

52. By omitting "artificially flavored" from the front label, consumers are not told that the (1) taste is not provided exclusively or predominantly from vanilla beans and (2) that the Product fails to taste like vanilla because it lacks the above-described odor-active compounds.

53. Fourth, the Product's ingredient list prevents consumers from learning the truth about the "vanilla" taste.

54. Because the Product contains added vanillin, the ingredient list should indicate "natural and artificial flavors."

55. Consumers who read the ingredient listing of "natural flavor" will not be told that "vanilla" on the front label does not mean the Product is flavored with artificial flavor ingredients other than vanilla beans.

56. Consumers are entitled to know "whether the product [they are buying] is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's

---

[1] Hallagan and Drake, p. 52.

vanilla flavor is provided by flavorings not derived from vanilla beans."[2]

57. Where a product is flavored from sources other than vanilla beans, it will not taste like vanilla.

58. Defendant knows consumers will pay more for the Product because the front label only states "vanilla" and not "artificially flavored" and "does not taste like real vanilla."

59. Defendant's omission and failure to disclose these facts is deceptive and misleading to consumers who want a vanilla flavored product that contains flavoring mainly from vanilla beans and tastes like vanilla.

60. Vanillin is found by plaintiffs and consumers to taste harsh and lack the depth of real vanilla extract.

61. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

62. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

63. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

64. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

65. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $ 3.99 per 64 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

---

[2] *Id.*

## JURISDICTION AND VENUE

66. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

67. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

68. Plaintiff Victoria Sidle is a citizen of New Jersey.

69. Defendant Wakefern Food Corp., is a New Jersey corporation with a principal place of business in Keasbey, Middlesex County, New York and is a citizen of New Jersey.

70. "Minimal diversity" exists because plaintiff Victoria Sidle and defendant are citizens of different states.

71. Upon information and belief, sales of the Product in New Jersey exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

72. Venue is proper in this judicial district because Plaintiff resides in this District and defendant is an entity with the capacity to sue and be sued in its common name under applicable law and is deemed to reside in this judicial district because defendant is subject to the court's personal jurisdiction in this State with respect to this action. *See* 28 U.S.C. § 1391(b)(1); *see also* 28 U.S.C. § 1391(c)(2).

73. Venue is further supported because many class members reside in this District.

## PARTIES

74. Plaintiff Victoria Sidle is a citizen of New Jersey, Maywood, Bergen County.

75. Defendant Wakefern Food Corp. is a New Jersey corporation with a principal place

11

of business in Keasbey, New York, Middlesex County and is a citizen of New York.

76. During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

77. Plaintiff Sidle purchased the Product on a weekly basis for no less than the past two years, at defendant's ShopRite store at 220 W Passaic St, Rochelle Park, NJ 07662.

78. Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use and relied upon the front label claims, expected a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans and did not expect a taste of vanillin, provided by artificial vanilla flavors.

79. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

80. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

81. The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

82. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

## CLASS ALLEGATIONS

83. The class will consist of all purchasers of the Product who reside in New Jersey and Pennsylvania during the applicable statutes of limitations.

84. Plaintiff seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

85. Common questions of law or fact predominate and include whether defendant's

representations were and are misleading and if plaintiff and class members are entitled to damages.

86. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

87. Plaintiff is an adequate representatives because her interests do not conflict with other members.

88. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

89. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

90. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

91. Plaintiff seeks class-wide injunctive relief because the practices continue.

## COUNT I
### Violation of New Jersey Consumer Fraud Act ("CFA") NJSA § 56:8-1, *et seq.*

92. Plaintiff incorporates by reference all preceding paragraphs.

93. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

94. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

95. Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

96. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect the Product

to be flavored by sources which were not predominantly vanilla beans and expect a Product that tastes like vanilla, because that is what the front label said – "Vanilla."

97. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

98. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT II
### Negligent Misrepresentation

99. Plaintiff incorporates by reference all preceding paragraphs.

100. Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

101. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla because it was not stated on the front label or ingredient list, where consumers are accustomed to looking and seeing this information.

102. Defendant had a duty to disclose the non-vanilla, artificial flavors and tell consumers the Product did not taste like vanilla because it lacked sufficient amounts of the compounds which provide the characteristic vanilla taste.

103. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

104. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

105. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the

Product.

106. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT III
### Breaches of Express Warranty

107. Plaintiff incorporates by reference all preceding paragraphs.

108. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

109. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

110. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

111. Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

112. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

113. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

114. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT IV
### Breaches of Implied Warranty of Merchantability

115. Plaintiff incorporates by reference all preceding paragraphs.

116. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

117. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

118. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

119. Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

120. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

121. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

122. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT V
### Breaches of Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

123. Plaintiff incorporates by reference all preceding paragraphs.

124. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

125. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

126. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

127. Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

128. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

129. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

130. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT VI
## Fraud

131. Plaintiff incorporates by reference all preceding paragraphs.

132. Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

133. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect a product labeled as "Vanilla" to be flavored mainly from artificial vanillin and therefore not taste like vanilla.

134. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor

accurate and misled consumers.

135. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT VII
## Unjust Enrichment

136. Plaintiff incorporates by reference all preceding paragraphs.

137. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## JURY DEMAND

Plaintiff demands a jury trial on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: November 17, 2020

    Respectfully submitted,

    **SHUB LAW FIRM LLC**

    */s/ Jonathan Shub*
    Jonathan Shub
    *jshub@shublawyers.com*
    Kevin Laukaitis (*Pro Hac Vice* to file)
    *klaukaitis@shublawyers.com*
    134 Kings Hwy. E., 2nd Floor
    Haddonfield, NJ 08033
    Telephone: (856) 772-7200
    Facsimile: (856) 210-9088

    **SHEEHAN & ASSOCIATES, P.C.**
    Spencer Sheehan (*Pro Hac Vice* to file)
    spencer@spencersheehan.com
    60 Cuttermill Rd Ste 409
    Great Neck, NY 11021
    Telephone: (516) 268-7080
    Facsimile: (516) 234-7800

    *Attorneys for Plaintiff and the Proposed Class*