Peter Sullivan (NJ Bar # 53331992)
August T Horvath (*pro hac vice application forthcoming*)
**Foley Hoag LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: 646-927-5500
Email: psullivan@foleyhoag.com
        ahorvath@foleyhoag.com

*Attorneys for Defendants*
*Wakefern Food Corp.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTORIA SIDLE, individually and on behalf of all others similarly situated, | Case No. 2:20-cv-16336 |
| Plaintiffs, | **REQUEST FOR ORAL ARGUMENT** |
| -against- | |
| WAKEFERN FOOD CORP., | Motion Returnable: February 16, 2021 |
| Defendant. | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

FACTUAL BACKGROUND ...................................................................5

ARGUMENT ........................................................................................8

I.     PLAINTIFF'S ATTEMPT TO ENFORCE THE FDCA IS
       PREEMPTED ...........................................................................11

II.    THE PRODUCT COMPLIES WITH ALL REGULATIONS, AND
       PLAINTIFF MAY NOT IMPOSE ADDITIONAL REQUIREMENTS ......14

III.   PLAINTIFF'S CLAIMS ALSO FAIL BECAUSE THE COMPLAINT
       DOES NOT PLAUSIBLY ALLEGE CONSUMER DECEPTION .............17

       A.   The Complaint Does Not Meet the Heightened Pleading Standard
            Under the New Jersey Consumer Fraud Act.........................18

       B.   Implausible False-Advertising Suits Are Routinely Dismissed as a
            Matter of Law ............................................................20

       C.   The Use of "Vanilla" Is Not Misleading to a Reasonable
            Consumer...................................................................23

       D.   Plaintiff Has No Basis for Her Assumptions about the Product's
            Ingredients ................................................................26

IV.    PLAINTIFF HAS NO STANDING TO SEEK INJUNCTIVE RELIEF .....30

V.     PLAINTIFF'S ANCILLARY CAUSES OF ACTION ARE
       IMPROPERLY PLED AND/OR INAPPROPRIATE ................................31

       A.   The Complaint Fails to State a Claim for Breach of Warranty..........32

       B.   The Complaint Fails to State a Claim for Negligent
            Misrepresentation .........................................................35

i

**C.**     The Complaint Fails to State a Claim for Fraud ..................................37

**D.**     The Complaint Fails to State a Claim for Unjust Enrichment ............38

CONCLUSION ........................................................................................................39

FH5225405.2

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Argabright v. Rheem Mfg. Co.*,
  No. 15-5243, 2016 U.S. Dist. LEXIS 108478
  (D.N.J. Aug. 15, 2016) ............................................................ 20 35, 36

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................17

*Banco Popular North America v. Gandi*,
  184 N.J. 161 (2005) ............................................................20

*Barreto v. Westbrae Natural, Inc.*,
  No. 1:19-cv-09677 (PKC), 2021 U.S. Dist. LEXIS 3436
  (S.D.N.Y. Jan. 7, 2021) ....................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................17

*Cali v. Chrysler Grp. LLC*,
  2011 U.S. Dist. LEXIS 5220 (S.D.N.Y. Jan. 18, 2011).......................................34

*Campbell v. Freshbev LLC*,
  332 F. Supp. 3d 330 (E.D.N.Y. 2018)...............................................22

*Campbell-Clark v. Blue Diamond Growers*,
  No. 1:18-cv-5577-WFK (E.D.N.Y. Dec. 17, 2019)............................................22

*Casey v. Odwalla, Inc.*,
  338 F. Supp. 3d 284 (S.D.N.Y. 2018) ............................................17

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) .............................................38

*Chufen Chen v. Dunkin' Brands, Inc.*,
  No. 17-CV-3808 (CBA) (RER), 2018 U.S. Dist. LEXIS 234591
  (E.D.N.Y. Sep. 17, 2018) ....................................................34

*Cosgrove v. Blue Diamond Growers*,
  2020 U.S. Dist. LEXIS 229294 (S.D.N.Y. Dec. 7, 2020)....................... 21, 25, 26

iii

*Cox v. Sears Roebuck & Co.*,
  138 N.J. 2, 647 A.2d 454 (N.J. 1994)...................................................................25

*Dawson v. Ciba-Geigy Corp., USA*,
  145 F. Supp. 2d 565 (D.N.J. 2001) .......................................................................11

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
  66 F.3d 604 (3d Cir. 1995) ....................................................................................36

*Eli Lilly & Co. v. Roussel Corp.*,
  23 F. Supp. 2d 460 (D.N.J. 1998) ........................................................................11

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ..................................................................................20

*Fishman v. GE*,
  No. 2:12-cv-00585 (WJM), 2013 U.S. Dist. LEXIS 61389
  (D.N.J. Apr. 30, 2013) ..........................................................................................32

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) ..................................................................................18

*Hall v. Welch Foods, Inc.*,
  No. 18-10500, 2019 U.S. Dist. LEXIS 126803 (D.N.J. July 9, 2019).................31

*Hammer v. Vital Pharm., Inc.*,
  Civil Action No. 11-4124, 2012 U.S. Dist. LEXIS 40632
  (D.N.J. Mar. 26, 2012) ................................................................................... 18, 21

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ........................................................................... 18

*In re ConAgra Foods Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012)................................................................34

*In re: Ford Motor Co. Ignition Switch Prods. Liability Litig.*, No. 96-1814,
  1997 U.S. Dist. LEXIS 24064, 2001 WL 1266317 (D.N.J .Sept. 30, 1997) .......34

*In re Frito-Lay North America All Natural Litigation*,
  12-MD-2413, 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)..........38

iv

*In re Johnson & Johnson Talcum Powder Prods. Mktg.,*
  *Sales Practices & Liab. Litig.*,
  903 F.3d 278 (3d Cir. 2018) ...................................................................31

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) ....................................................... 19, 37

*In re Trader Joe's Tuna Litig.*,
  289 F. Supp. 3d 1074 (S.D. Cal. 2017) ............................................. 12

*International Prods. Co. v. Erie R. R. Co*.,
  244 N.Y. 331 (1927).............................................................................35

*Jessani v. Monini N. Am., Inc.*,
  744 F. App'x 18 (2d Cir. 2018) ..........................................................21

*Johansson v. Cent. Garden & Pet Co.*,
  804 F. Supp. 2d 257 (D.N.J. 2011)......................................................34

*Kennedy v. Mondelez Glob. LLC,*
  No. 19-CV-302-ENV-SJB, 2020 U.S. Dist. LEXIS 124538
  (E.D.N.Y. July 10, 2020)......................................................................21

*Kimmell v. Schaefer*,
  89 N.Y.2d 257 (1996).......................................................................35

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) ............................................. 18, 37

*Mason v. Coca-Cola Co.*,
  774 F. Supp. 2d 699 (D.N.J. 2011) ....................................................20

*Neuss v. Rubi Rose, LLC,*
  No. 16-2339 (MAS) (LHG), 2017 U.S. Dist. LEXIS 83444
  (D.N.J. May 31, 2017).................................................................. *passim*

*Parks v. Ainsworth Pet Nutrition, LLC,*
  377 F. Supp. 3d 241 (S.D.N.Y. 2019)..................................................32

*Patane v. Nestle Waters North America, Inc.*,
  314 F. Supp. 3d 375 (D. Conn. 2018) ......................................... 12, 13

FH5225405.2

*Payan v. GreenPoint Mortg. Funding, Inc.*,
    681 F.Supp.2d 564 (D.N.J.2010) ........................................................................18

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997) ..................................................................... 11, 12

*Pichardo v. Only What you Need, Inc.,*
    No. 20-cv-0493 (VEC), 2020 U.S. Dist. LEXIS 199791
    (S.D.N.Y. Oct. 27, 2020)................................................................. *passim*

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
    No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 26, 2019).......22

*Sarr v. BEF Foods*,
    No. 18-cv-6409-ARR, 2020 U.S. Dist. LEXIS 25594
    (E.D.N.Y. Feb. 13, 2020) ..................................................... 20, 22, 38

*Sibrian v. Cento Fine Foods, Inc.,*
    No. 19-cv-0974-JS-ST, 2020 U.S. Dist. LEXIS 117300
    (E.D.N.Y. July 2, 2020) .................................................................22

*Smajlaj v. Campbell Soup Co.*,
    782 F. Supp. 2d 84 (D.N.J. 2011).......................................................25

*Solak v. Hain Celestial Grp., Inc.*,
    No. 3:17-cv-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270
    (N.D.N.Y. April 17, 2018) ...............................................................22

*State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*,
    646 F. Supp. 2d 668 (D.N.J. 2009).....................................................36

*Steele v. Wegmans Food Markets, Inc.,*
    No. 1:19-cv-09227 (LLS), 2020 U.S. Dist. LEXIS 123637
    (S.D.N.Y. July 14, 2020) ............................................................. *passim*

*Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.,*
    No. 08-5380 (JLL), 2009 U.S. Dist. LEXIS 112773 (D.N.J. Dec. 3, 2009)........39

*Young v. Johnson & Johnson,*
    2012 U.S. Dist. LEXIS 55192 (D.N.J. April 19, 2012) ......................................12

FH5225405.2

*Zaback v. Kellogg Sales Company,*
   No. 3:20-cv-00268-BEN-MSB, 2020 U.S. Dist. LEXIS 202697
   (S.D. Cal. Oct. 29, 2020) ........................................................................16

## Statutes & Regulations

15 U.S.C. § 2310 .......................................................................................33

21 C.F.R. § 101.22 ............................................................................... 15, 16

21 U.S.C. § 337 .................................................................................... 11, 12

21 U.S.C. § 343 .................................................................................... 14, 26

Fed. R. Civ. P. 9(b) .....................................................................................3

New Jersey Consumer Fraud Act N.J.S.A. § 56:8-1 ...........................................2, 3

FH5225405.2

## **INTRODUCTION**

Plaintiff's Complaint (Dkt. 1) adds to the collection of more than 90 recent cut-and-paste putative class-action lawsuits filed by the same Plaintiff's counsel involving products that bear the flavor designation "vanilla."  This current case involves a product introduced to the market by Wakefern Food Corp. ("Wakefern") identified as "Wholesome Pantry Almondmilk,"  Unsweetened Vanilla (the "Product"), and whether its "vanilla" designation on the front label communicates to consumers an extensive series of implied messages about the source of the vanilla flavoring in the almondmilk.  Plaintiff alleges that it does, and then further alleges that the contents of the Product contradict those implied messages.  Common sense and common knowledge, however, dictate the opposite conclusion – that consumers understand "vanilla" as a flavor designator, not an ingredient claim.  A reasonable consumer would not perceive the misleading messages alleged by Plaintiff to be communicated about the Product, and the remedies suggested by Plaintiff would make no difference in a reasonable consumer's interpretation of the packaging.  Thus, like so many other vanilla labeling cases filed by Plaintiff's counsel, this case should be dismissed for failure to state any cognizable claim.

Despite extensive allegations, many of them unrelated to the facts and substantive allegations of the lawsuit, Plaintiff has failed to plead any plausible

1

claims or any plausible basis on which a consumer would either (1) receive any specific message from the Product's labeling as to the source of its vanilla taste, or (2) care what the source is, so long as the almondmilk they purchase tastes of vanilla.  Consumers do not desire vanilla bean extract for its nutritive properties, for it is not a nutrient – it is strictly a flavoring.

Even if Plaintiff could establish that the Product's labeling communicates what she claims it does, Plaintiff has failed to allege plausibly that the contents of the Product differ from what is allegedly represented on its label.  Plaintiff has no basis for anything that she alleges about the contents of the Product other than the occurrence of one term – "natural flavor" – in its ingredient statement (Complaint ¶ 36) and the results of an unidentified and vague lab analysis that is a self-evidently worthless statement (*Id*. ¶ 37-38).

Plaintiff's theory for asserting consumer deception is that a violation of the FDCA is *per se* a deceptive practice under state consumer protection laws such as New Jersey's Consumer Fraud Act. N.J.S.A. § 56:8-1 ("NJCFA").  Such theory is fatally flawed for two primary reasons.

First, to plead a cause of action, Plaintiff must step away from alleged technical violations of the FDCA, and plausibly plead that a reasonable consumer would interpret the phrase "Almondmilk unsweetened vanilla" to mean that all of the vanilla flavor in the almondmilk comes from vanilla bean extract alone.

2

Complaint ¶¶ 2, 32, 41.  This, Plaintiff failed to do.  Instead, Plaintiff offers only

misguided allegations that are concerned almost entirely with accusations that

Wakefern violated the Food, Drug & Cosmetic Act ("FDCA"), as interpreted by

Plaintiff.  But in doing so Plaintiff incorrectly interprets the FDCA, further

rendering her Complaint legally deficient.  She mischaracterizes and misconstrues

the regulations under the statute and relies on unreliable third-party sources and her

own non-expert intuition for her interpretations.  In fact, the Product's label

complies with the FDCA.

    Second and moreover, Plaintiff has no right to litigate whether Wakefern

violated the FDCA, either directly or indirectly under the guise of a NJCFA claim.

Not only are alleged violations of the FDCA not *per se* deceptive practices under

NJCFA § 56:8-1, but Plaintiff is expressly preempted from attempting to enforce

the FDCA privately by asserting state-law duties that are tantamount to FDCA

compliance, and courts have held that alleged regulatory violations are not

informative of whether consumers have been misled.  Finally, even if Plaintiff

could plead a case of action under NJCFA, she has not met the heightened Rule

9(b) pleading standard.

     Insofar as Plaintiff's claims sound in fraud, including her specific count of

fraud, they must be pled with the particularly required by Fed. R. Civ. P. 9(b).

Here, however, there are almost no allegations specific to the Product in the

Complaint, as most allegations are copy-and-pasted from one of Plaintiff's counsels' many other vanilla lawsuits.  The allegations contain unconfirmed references to the history of vanilla, unsubstantiated opinions and declarations disguised as facts about vanilla and vanilla preferences generally, sweeping generalizations about the food industry's purportedly deceptive labeling practices, and references to articles written by attorneys for a trade association of vanilla extract companies, none of which should hold any weight in the eyes of this Court. Plaintiff's factual allegations about the contents of the Product are based on unfounded speculation about the meaning of its ingredient statement and, as mentioned, a lab analysis that concludes nothing.

Plaintiff also pleads assorted secondary causes of action that should all fail together with her core false-advertising claims, but in the alternative, should be dismissed because they are inappropriate for the situation alleged by Plaintiff. Plaintiff also prays for injunctive relief, which should be denied because, by her own admission, she is now aware of the alleged deception, and is at no risk of being deceived and injured in the future.

4

## **FACTUAL BACKGROUND**

The Complaint alleges as follows with respect to Wakefern and the Product.[1] Wakefern operates over three hundred ShopRite supermarkets across six different states.  Wakefern manufactures, distributes, markets, labels and sells unsweetened almondmilk under its Wholesome Pantry® brand, identified in the Complaint and herein as the "Product."  What purports to be a copy of the front label on the Product is presented on page 2 of the Complaint.  The label identifies the Product as "Almondmilk Unsweetened Vanilla" and depicts pictures which the Complaint describe as "cured vanilla beans" and a "vanilla flower."  The ingredient list lists several ingredients, including almondmilk and "natural flavor."

After making the foregoing allegations, the Complaint goes on to make several unsubstantiated allegations about the labeling of vanilla products in the marketplace, consumer expectations with respect to the Product and a vague lab analysis purportedly performed by Plaintiff.

---

[1] The allegations in the Complaint, which are summarized in this Section, are assumed true for purposes of this Motion only, except to the extent that Wakefern contends that they are inadequately pled without sufficient supporting factual allegations.  Wakefern reserves all rights to challenge the accuracy of factual allegations in the Complaint if necessary following disposition of the Motion.

For further context as the Court considers this Motion, it is well known in the food industry (and common sense) that developing the taste profile of a packaged food, such as the Product, often entails the selection and combination of a variety of flavor and non-flavor ingredients that will produce a distinctive, satisfying, consistent, and affordable product that will delight consumers. Plaintiff's main argument, that flavoring almondmilk with a flavor such as vanilla should be as simple as adding vanilla extract to plain almondmilk, is too simplistic a caricature of the food product development process to be believed by reasonable consumers. If all producers flavored their products with only vanilla extract, every producer's vanilla almondmilk would taste similar if not the same, and consumers would have very little reason to prefer one brand over another.

Indeed, a district court in the Southern District of New York recently recognized that "virtually all commercial references to vanilla are to vanillin; very few commercial products have vanilla taste that derives entirely from vanilla extract." *Pichardo v. Only What You Need, Inc.,* No. 20-cv-493 (VEC), 2020 U.S. Dist. LEXIS 199791 at *5-6  (S.D.N.Y October 27, 2020).  In a highly competitive market for consumer taste, almondmilk producers seek not just to create a vanilla almondmilk, but to create one that is different and better tasting than those of their competitors.  Adding layers of other natural flavors results in a robust, well-rounded flavor that some consumers prefer over other brands.  To this end, many

6

producers flavor their vanilla almondmilk with a package of flavorings, carefully developed by specialized flavor suppliers, with their proprietary formulations kept as a trade secret.  Generically, these packages are termed "vanilla with other natural flavors," or "vanilla WONF."  Most, and sometimes all, of the secondary flavorings included in these flavor packages do not taste of vanilla, but contribute additional, subtle flavor notes to the finished product.  Plaintiff herself acknowledges such attributes in her Complaint.  Complaint ¶¶ 18-24.  Developing these sensory profiles is a whole branch of applied science, whose practitioners give names to characteristics such as roundness, smoothness, creaminess, nuttiness, and others that contribute to an almondmilk product with a rich, complex, and differentiated flavor profile.

Another important purpose of multiple flavor ingredients is often to provide consistency in the product's taste.  Consumers want not only a great tasting almondmilk, but also for each carton of almondmilk to taste like the previous ones.  The inclusion of such flavors does not mean that there is not enough vanilla extract to supply the vanilla taste of the final product.  It simply helps produce a consistent, high-quality product.

For products that incorporate a vanilla WONF package, the flavor supplier, without disclosing its exact ingredients, certifies that the flavoring meets any requirements set by the producer, such as being unsweetened, all-natural, and so

7

forth, as well as providing guidance on the declaration of the flavoring in the ingredient statement.  Often, the entire vanilla WONF package is listed as "natural flavor," because the vanilla bean extract and all of the other flavor components of the package are natural flavors.  Indeed, vanilla bean extract can be listed as "natural flavor" even if it is the only flavoring present.  Thus, the listing of "natural flavor" in the ingredient statement tells nothing about the flavoring contents of the product, other than that none of them is artificially derived.

## ARGUMENT

None of the above-described sophisticated process of developing a great tasting almondmilk fits into Plaintiff's simplistic, cynical worldview.  Plaintiff alleges that the designations of a product as "vanilla" almondmilk, regardless of the nature or context of the representation, implies to consumers, that:  (1) there is a certain sufficient amount of vanilla to flavor the product, (2) the Product is flavored to taste only of the characterizing flavor "vanilla" and not any additional flavor notes, (3) vanilla bean extract is the exclusive source of the Product's flavor, and (4) that no other flavors simulate, resemble, reinforce, extend or enhance flavoring from vanilla.  Complaint ¶¶ 3, 5, 35, 36, 41, 44, 45, 52, 57, 60.  It is implausible that reasonable consumers perceive any of these meanings from these mere designations on a product label.  The first implied meaning is too vague to ever be proven or disproven – who, if not consumers through their purchasing

8

decisions, is to be the judge of whether there are "sufficient amounts of the compounds which provide the characteristic vanilla taste?"  Complaint ¶ 102. Plaintiff alleges not the slightest factual basis to contend that consumers read "vanilla almondmilk" to mean anything other than that the almondmilk has a vanilla taste.  No reasonable consumer would interpret the flavor designator "vanilla" as an ingredient claim, let alone interpret the flavor designator as identifying the exclusive botanical source of the vanilla taste in the beverage.  This point is made even more obvious by the fact that the ingredient list does not list "vanilla" as an ingredient.

Plaintiff alleges that the implied statements are deceptive because, allegedly, there are other flavorings in the Product besides vanilla extract that simulate vanilla.  The main basis for these allegations is only that the ingredient list on the back label of the Product includes the item "natural flavor."  Complaint ¶ 36. Plaintiff also includes an excerpt of a laboratory analysis, whose interpretation is entirely her attorneys' interpretation, but without the full results of the analysis or methodology, let alone any support from the researcher who conducted the analysis or any other expert.  Complaint ¶¶ 37, 38.  This type of tawdry analysis does nothing to support Plaintiff's claims.

Indeed, the district court in the Southern District of New York recently held as much, in an almost identical case against Westbrae Natural Inc. brought by the

9

same counsel involving a vanilla soymilk product and an almost identical lab analysis.  The *Barreto* court held specifically that such an analysis does not support a contention that there is no natural vanilla in the product or that the added vanillin comes from artificial rather than natural sources.  *Barreto v. Westbrae Natural, Inc.,* No. 1:19-cv-09677 (PKC), 2021 U.S. Dist. LEXIS 3436, at *9 (S.D.N.Y. Jan. 7, 2021).  The *Barreto* court further found that neither the "vanilla" flavor designator on the product nor the ingredient panel suggested that the predominate source of the vanilla flavor was vanilla from vanilla beans, and that "[a] reasonable consumer would not draw a conclusion as to the quantity or predominance of the natural flavor so long as some of the vanilla flavor was derived from natural vanilla and the balance from other natural flavors."  *Id.* at *13.

The *Barreto* decision followed other recent case law, discussed fully below, which further supports dismissal of Plaintiff's claims in this case.  Courts agree that the flavor designator communicates nothing about the source or amount of the ingredients used to supply the vanilla flavor, or at most, that the product contains some – but not any specific amount or proportion – of vanilla extract.  *See Steele v. Wegmans,* No. 1:19-cv-09227 (LLS), 2020 U.S. Dist. LEXIS 123637, at *5 (S.D.N.Y. July 14, 2020); *Pichardo*, 2020 U.S. Dist. LEXIS 199791, at *11.  Nor does the label imply anything about the absence of other flavoring ingredients, as Plaintiff claims.

10

## I.    PLAINTIFF'S ATTEMPT TO ENFORCE THE FDCA IS PREEMPTED

Plaintiff's claims are dependent on her own misguided interpretation of FDA regulations promulgated under the FDCA, alleging, without support or citation, that the Product's packaging and labeling are not in compliance with such regulations pertaining to vanilla.  Complaint ¶¶ 29, 33, 34.  The only factual bases for Plaintiff's allegations that the Product's packaging deceives consumers are conclusory allegations that any products not conforming to federal regulations, as interpreted by Plaintiff, are deceptive.

This focus on food and drug regulations as the basis for Plaintiff's allegations of consumer deception reveals the Complaint as Plaintiff's attempt to privately enforce the FDCA, because Plaintiff's counsel believes to have spotted a technical violation of FDA regulations.  But Plaintiff is not the FDA, and is neither competent to interpret, nor empowered to enforce, FDA regulations.  The right to enforce the FDCA rests exclusively with the FDA, meaning there is no private cause of action.  *See* 21 U.S.C. § 337(a); *Dawson v. Ciba-Geigy Corp., USA*, 145 F. Supp. 2d 565, 570 (D.N.J. 2001); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 476 (D.N.J. 1998) ("Only the federal government, by way of either the FDA or the Department of Justice, has exclusive jurisdiction to enforce violations of the FDCA."); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113

11

(2d Cir. 1997) (there can be no private cause of action if a plaintiff's "true goal is to privately enforce alleged violations of the FDCA").

Not only can Plaintiff not explicitly seek to enforce the FDCA directly, she also cannot do so indirectly under the guise of a state-law cause of action.  Such claims based on alleged violations of FDCA regulations preempted by the federal statute.  *See Young v. Johnson & Johnson,* 2012 U.S. Dist. LEXIS 55192, *1 (D.N.J. April 19, 2012), *aff'd, Young v. Johnson & Johnson,* 525 Fed. Appx. 179, 184 (3d Cir. 2013).  "Where a state law claim would not exist but for a FDCA regulation, [21 U.S.C.] § 337(a) impliedly preempts the claim."  *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375, 387 (D. Conn. 2018) (dismissing state-law deceptive practices claims where "[e]ach and every one of plaintiffs' claims are wholly FDCA-dependent").  "[C]ourts have concluded that where a state has not adopted statutes that expressly mirror the FDCA … a plaintiff's claim that relies on the defendant's failure to comply with federal regulations is impliedly preempted." *In re Trader Joe's Tuna Litig.,* 289 F. Supp. 3d 1074, 1086 (S.D. Cal. 2017) (dismissing New York G.B.L.§§ 349-350 claims). Plaintiff has not alleged the existence of any New Jersey statute which either incorporates of mirrors the FDCA.  "Where, like here, a plaintiff's true purpose is to enforce federal regulations, masquerading as a state-law claim where the state has not

12

adopted a parallel statutory scheme is not sufficient to escape preemption." *Id.* at 1086.

This case amounts to nothing more than a thinly-veiled attempt to enforce the Food, Drug & Cosmetic Act through a disguised state consumer protection law claim. The positions Plaintiff adopts with respect to the interpretation of the Product's labeling and ingredient statement would be implausible on their own merit, and Plaintiff can argue that they are unlawful only because they purportedly constitute technical violations of the FDA and its implementing regulations. Tellingly, Plaintiff often refers vaguely to regulatory requirements and secondary sources without citing specific regulations in an attempt to disguise her Complaint's reliance on them. Complaint ¶¶ 33, 36-49, 54. Plaintiff's interpretations and application of FDCA regulations and arguments as to "conformity with this or that standard (which is left to the authorities to regulate)" do not give rise to a claim. *Steele,* 2020 U.S. Dist. LEXIS 123637, at *4. This is truly a case that "would not exist but for a FDCA regulation." *Patane,* 314 F. Supp. at 387. Accordingly, Plaintiff's claims based on alleged violations of the FDCA regulations are preempted by federal law and must be dismissed.

13

## II.     THE PRODUCT COMPLIES WITH ALL REGULATIONS, AND PLAINTIFF MAY NOT IMPOSE ADDITIONAL REQUIREMENTS

Although litigating alleged violations of FDA regulations in cases like this is exactly what the FDCA's preemption provisions are intended to prevent, Plaintiff compounds the problems with her Complaint by completely misconstruing the actual regulations.  Almost everything Plaintiff alleges about food regulations is legally incorrect, with Plaintiff ignoring provisions that undermine her allegations.  In reality, the Product complies fully with all applicable FDA regulations and Plaintiff has provided no facts to the contrary.

Plaintiff attacks areas of the Product's packaging that are closely governed by extensive federal regulations.  The first area challenged is the official product name, "Almondmilk Unsweetened Vanilla," as shown on the primary display panel (PDP).  Plaintiff contends that "vanilla" in the Product name must be the common name of the ingredient(s) that provide(s) the vanilla flavor in the beverage, as provided in the Act's specific vanilla flavoring regulations (Complaint ¶¶ 25-29), as if the almondmilk were being marketed as a vanilla extract.  Therefore, Plaintiff asserts, if any part of the ingredient(s) providing the vanilla flavor is anything other than vanilla extract from vanilla beans, this word may not be merely "vanilla" without violating FDA regulations.  Complaint ¶¶ 31-33.  This is wrong.

14

Under the regulations, the accuracy of the description "almondmilk unsweetened" as used in the Product's name is undisputed. To describe the flavor of the unsweetened almondmilk, the Product includes the flavor designation "vanilla." Under 21 U.S.C. § 343(i), a food must bear on its label "the common or usual name of the food," in this case "almondmilk," but need not specify the spices, flavorings and colorings used in the food. The FDCA specifically exempts the name of a flavoring, when included in the name of a food, from having to comply with the standard of identity or common-name rules that would apply if it were an ordinary ingredient. The FDA's vanilla standards of identity are inapplicable to this Product. The food regulations recognize what Plaintiff refuses to acknowledge: flavor designators are not ingredient claims, and are treated differently, because their purpose is to communicate what the product will taste like. Under the regulations, the Product is properly labeled.

Furthermore, under 21 C.F.R. § 101.22(h)(1), any "[s]pice, natural flavor, and artificial flavor may be declared as 'spice,' 'natural flavor,' or 'artificial flavor'" in the ingredient statement. Vanilla extract is used in the Product as a flavor, and, being naturally derived, may be disclosed as "natural flavor" in the ingredient statement, whether it is used alone or combined with other natural flavors. 21 C.F.R. § 101.22(i) is applicable here and permits products to be labeled as having a particular "characterizing" flavor by stating the "common or usual

15

name of the characterizing flavor."  21 C.F.R. § 101.22(i).  In fact, this regulation

expressly contemplates the term "vanilla" to be properly on a label when vanilla is

the characterizing flavor, and cites using the term "vanilla" as a correct label for a

vanilla-flavored product.  *Id.*  The only exceptions are for when a product is (1)

commonly expected to contain a particular ingredient, or (2) the product is

artificially flavored.  *Id.*  Neither exception applies here, despite Plaintiff's

conclusory and baseless allegations that the Product is artificially flavored.  There

are no standard expectations that vanilla-flavored almondmilk would have any

specific ingredient.  Where vanilla-flavored products are flavored with vanilla and

other natural flavors, as is the case here, 21 C.F.R. § 101.22(i)(1)(iii) permits

products to state they are flavored with vanilla and other natural flavors, as the

Product does.  The Product's ingredient statement, which lists "natural flavor," is

fully compliant with regulations and is consistent with a product flavored by

vanilla extract alone or in combination with other natural flavors.  To the extent

Plaintiff attempts to argue that the identification of "natural flavor" and not

"vanilla extract" in the ingredient statement implies that the Product is flavored

with non-vanilla flavors, such an argument was rejected as a matter of law by the

Southern District of California in *Zaback v. Kellogg Sales Co.* because it

"misstates the law with respect to the listing of 'natural flavors' on an ingredient

statement." 2020 U.S. Dist. LEXIS (S.D. Cal. June 22, 2020) (dismissing similar claims).

In sum, in products that employ vanilla as a flavor, the Food, Drug & Cosmetic Act does not impose the requirements that Plaintiff alleges. Plaintiff therefore is seeking to impose additional requirements, beyond and inconsistent with regulatory provisions such as 21 C.F.R. § 101.22(h)(1), in the heavily regulated areas concerning the official front-panel product name and the FDA-mandated ingredient statement. Plaintiff's attempt to impose additional or other labeling requirements not identical to the FDA regulations are not only substantively improper, but also expressly preempted. *See Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 296 (S.D.N.Y. 2018) ("[I]f a product's packaging does not run afoul of federal law governing food labeling, no state law claim for consumer deception will lie.").

## III.   PLAINTIFF'S CLAIMS ALSO FAIL BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE CONSUMER DECEPTION

"To survive a motion to dismiss [pursuant to Federal Rule 12(b)(6)], a complaint must contain sufficient *factual* matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)) (emphasis added). This standard is met "when the plaintiff pleads *factual* content that allows the court

17

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id* (emphasis added).  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997). Plaintiffs fail to meet this standard, making only conclusory allegations about highly improbable meanings that they allege consumers may receive from the mere designation of the Product as "vanilla almondmilk."

### A.    The Complaint Does Not Meet the Heightened Pleading Standard Under the New Jersey Consumer Fraud Act

To state a prima facie case under the NJCFA, a plaintiff must sufficiently plead three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss. *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F.Supp.2d 564, 572 (D.N.J.2010).  Moreover, "it is well-established that claims under the NJCFA must also meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Hammer v. Vital Pharm., Inc.*, Civil Action No. 11-4124, 2012 U.S. Dist. LEXIS 40632, at *10 (D.N.J. Mar. 26, 2012) citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) . This heightened standard requires that the plaintiff state the alleged fraud with

18

sufficient particularity, including the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Hammer*, 2012 U.S. Dit. LEXIS 40632 at *10.  The Third Circuit has advised that, at a minimum, a plaintiff must support allegations of fraud with all the essential factual background that would accompany "the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *Id.* quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (internal quotations omitted).

Plaintiff's NJCFA claim does not meet this statutory test.  Rather than the Product, the Complaint largely focuses on the history of vanilla, the chemical composition of vanilla, and baseless consumer expectations.  There are almost no allegations specific to the Product's almondmilk product in the Complaint. Wakefern is not put on notice of the "essential factual background" are required by the heightened pleading standard under NJCFA.  The allegations about the Product are based on unfounded speculation about the meaning of its ingredient statement and, as mentioned, a lab analysis that concludes nothing.  These allegations do not rise to the level of particularity required by Rule 9(b).

## B.     Implausible False-Advertising Suits Are Routinely Dismissed as a Matter of Law

To prove conduct a claim to be actionable under the NJCFA, Plaintiff must show that the Product's "vanilla" label on its almondmilk packaging is false and calculated to mislead a reasonable consumer.  *See Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 703 (D.N.J. 2011); *Argabright v. Rheem Mfg. Co.*, No. 15-5243, 2016 U.S. Dist. LEXIS 108478, at *50 (D.N.J. Aug. 15, 2016) ("[T]o determine whether a defendant's advertisements and marketing statements violated the consumer fraud statute, courts examine the overall impression created by an advertisement to decide whether it is misleading and deceptive to an ordinary reader.") (internal quotation marks omitted); *Banco Popular North America v. Gandi*, 184 N.J. 161, 172-73 (2005) (fraud requires, *inter alia*, "a material misrepresentation of a presently existing or past fact" and an "intention that the other person rely on it").  A court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer.  *See Mason*, 774 F. Supp. 2d at 701; *Fink v. Time Warner Cable,* 714 F.3d 739, 741 (2d Cir. 2013).  "To state a claim [for deceptive food labeling], 'plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'"  *Sarr v. BEF Foods, Inc.,* No. 18-cv-6409, 2020 U.S. Dist.

20

LEXIS 25594, at *11 (E.D.N.Y. Feb. 13, 2020) (quoting *Jessani v. Monini N. Am., Inc.,* 744 F. App'x 18, 19 (2d Cir. 2018)).

Although dismissal of false-advertising cases on this ground was once uncommon, a recent rash of meritless lawsuits has created an ever-growing body of Rule 12 case law dismissing challenges to advertising claims, and particularly food labels, because they would not deceive a reasonable consumer. *See, e.g., Hammer*, 2012 U.S. Dist. LEXIS 40632, at *38 (dismissing NJCFA claims alleging misrepresentation on the packaging of a dietary supplement); *Steele*, 2020 U.S. Dist. LEXIS 123637 (dismissing a case substantially identical to this one, alleging misleading "vanilla" flavor designator on ice cream); *Pichardo v. Only What You Need, Inc.,* No. 20-cv-493 (VEC), 2020 U.S. Dist. LEXIS 199791 (S.D.N.Y October 27, 2020) (applying *Steele v. Wegmans* and dismissing case substantially identical to this one, alleging misleading "vanilla" flavor designator on a protein vanilla-flavored drink); *Cosgrove v. Blue Diamond Growers,* 2020 U.S. Dist. LEXIS 229294 (S.D.N.Y. Dec. 7, 2020) (dismissing a case and finding that an almondmilk's label is not misleading because a reasonable consumer would associate the representation of 'Vanilla' to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient"); *Kennedy v. Mondelez Glob. LLC,* No. 19-CV-302-ENV-SJB, 2020 U.S. Dist. LEXIS 124538 (E.D.N.Y. July 10, 2020) (dismissing claims that the terms "graham," "graham crackers," and "8g of whole

21

grain per 31g serving" are misleading and deceptive); *Sibrian v. Cento Fine Foods, Inc.*, No. 19-cv-0974-JS-ST, 2020 U.S. Dist. LEXIS 117300 (E.D.N.Y. July 2, 2020) (dismissing a case alleging that "San Marzano" tomatoes did not comply with Italian designation-of-origin certifications because a reasonable consumer would not know the details of such certifications); *Sarr*, No. 18-cv-6409-ARR, 2020 U.S. Dist. LEXIS 25594 (dismissing case against a food label because it would not communicate a misleading message to a reasonable consumer); *Campbell-Clark v. Blue Diamond Growers*, No. 1:18-cv-5577-WFK (E.D.N.Y. Dec. 17, 2019) (dismissing allegations that packaging for "nut and rice" crackers implicitly overstated their nut content); *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971, at *8-16 (E.D.N.Y. July 26, 2019) (dismissing implausible allegations that "made with real butter" on mashed potato product implied absence of margarine); *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-cv-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270, at *8-36 (N.D.N.Y. April 17, 2018) (name of "veggie straws" snacks and images of vegetables are truthful in that they imply the snacks are made from vegetables, and do not reasonably imply that the snacks contain fresh, whole, ripe vegetables); *Campbell v. Freshbev LLC,* 332 F. Supp. 3d 330, 341 (E.D.N.Y. 2018) (truthful claim that a juice is "cold-pressed" does not imply that it is only cold-pressed, and not also processed in any other way).

22

It follows here that this suit should also be dismissed as a matter of law.

### C.    The Use of "Vanilla" Is Not Misleading to a Reasonable Consumer

The fundamental claim of the Complaint is that calling the Product "vanilla almondmilk" implies not just a flavor or taste claim, but an ingredient claim. Contrary to the attempts Plaintiff makes in trying to sustain this theory, reasonable consumers would not take the words "vanilla" or "vanilla almondmilk" to mean that only vanilla beans were used to flavor the product.  Nor would a consumer be misled to think that the word "vanilla" or depiction of the vanilla flower on the packaging mean that the Product contains a certain amount of vanilla.  Instead, the phrases "vanilla" and "vanilla almondmilk" and picture of the vanilla plant serve to distinguish the Product from the other types of almondmilk and helps consumers in choosing which flavor they want to purchase.

The Court in *Steele v. Wegmans* held that the labeling analysis must focus on whether the food's flavor designator "vanilla" is plausibly deceptive to the reasonable consumer, and found in that case that it is not, because the "vanilla" flavor designator merely informs the consumer that the product (in that case ice cream) tastes like vanilla, rather than chocolate, lemon, etc.  2020 U.S. Dist. LEXIS 123637 at *4-5.  The Court determined that the product in question was vanilla ice cream, and thus "of course [the consumer] is not looking for a bowl of

23

vanilla." *Id.* at *4.  The flavor designator communicates nothing about the source of the vanilla flavor, *Id.*  at *5, and as the Court further stated, "it is hard to see where there is deception" where the container does not mention vanilla beans, or bean extract.  *Id.* at *6.

Following the *Steele* decision, the Court in *Pichardo v. Only What You Need, Inc.,* applied the same reasoning to rule that a drink labeled "Smooth Vanilla," that does not state that it is "made with vanilla extract" or even contain the words "vanilla extract," would not mislead a reasonable consumer to believe that all (or even most) of the vanilla taste comes from vanilla extract.  *Pichardo,* 2020 U.S. Dist. LEXIS , at *5.  "Nor does the use of the term vanilla imply that there are no other flavoring ingredients." *Id.* at *10.  Even consumer surveys proffered by the *Pichardo* plaintiffs could not establish the plausibility of the alleged consumer deception.  *Id.* at *7.  Similarly, Plaintiff in this case also has no basis to allege that consumers are deceived by any of Plaintiff's alleged ingredient claims from the Product's packaging.  The actual message communicated to consumers by "vanilla almondmilk" is that this carton contains almondmilk that tastes like vanilla, as opposed to unflavored or chocolate flavor.

For a claim to be actionable under the NJCFA, Plaintiff must plead facts that plausibly establish that the Product's "vanilla" label on its almondmilk packaging is false and calculated to mislead a reasonable consumer.  *See Cox v. Sears*

*Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 461 (N.J. 1994); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98-99 (D.N.J. 2011).  Plaintiff's has failed to plead facts that meet this standard.  Plaintiff thus attempts to make alternative assertions that the Product does not taste of vanilla.  Complaint ¶¶ 3, 59.  However, Plaintiff's subjective allegations that the Product "does not taste like vanilla" (Complaint ¶ 3) are not factual allegations sufficient to sustain Plaintiff's Complaint.  Indeed, such claims must be read as hyperbole rather than serious factual allegations, because there is no plausible basis to contend that an ordinary consumer drinking the Product's Vanilla Almondmilk would not identify the taste of the beverage as vanilla.

The *Cosgrove* case, cited above, addressed these types of subjective, non-factual claims with respect to vanilla flavor in almondmilk.  In *Cosgrove*, the court found that despite the plaintiff's arguments that the use of vanillin makes the product taste differently from the name of the flavor indicated, and in particular, that the product "lacks cinnamon, fruity, floral, creamy and buttery notes expected from authentic vanilla," (*Cosgrove v. Blue Diamond Growers,* Am. Compl. Dkt. 24, at 1), plaintiff in that case presented "no allegations that would show their argument regarding the taste of 'authentic' vanilla is anything but a *subjective* one, not shared by the reasonable consumer." *Cosgrove,* 2020 U.S. Dist. LEXIS at *11 (citing *Pichardo*, 2020 U.S. Dist. LEXIS 199791at *6) (emphasis added).  These

25

allegations about taste in *Cosgrove* are almost identical to Plaintiff's assertions in this case.  Thus, like the plaintiff in *Cosgrove*, Plaintiff's attempt to sustain her claims in this case based on her subjective conclusions that the taste of the vanilla did not meet her personal expectations fails as a matter of law.

### D.     Plaintiff Has No Basis for Her Assumptions about the Product's Ingredients

Plaintiff's only bases for alleging that the Product does not contain the represented type and amount of vanilla flavoring (*i.e.*, that the Product contains less vanilla than the label represents and contains artificial non-vanilla flavors which provide the Product's vanilla taste which are not disclosed to consumers on the front label as required by law and consumer expectations) are (1) that the ingredient statement of the product includes the item "natural flavor" rather than "vanilla extract," Complaint ¶ 36, and (2) descriptions of a purported laboratory analysis that should be accorded no weight.

### a.     Plaintiff's Assumptions Based on the Product Label are Invalid

Under FDA regulations, as further explained below, listing "natural flavor" in the ingredient statement is consistent with a product flavored wholly, predominantly, or only partially by vanilla bean extract.  *See* 21 U.S.C. § 343(i)(2) (spices, flavorings and colors may be designated in ingredient statements as spices, flavorings and colors, without naming each).  "Natural flavor" in the ingredient

statement is consistent, from a regulatory standpoint, with any combination of vanilla extract and other natural flavors contributing to both the vanilla and non-vanilla flavors in the product.

Further, Plaintiff fails to acknowledge that a product labeled as "vanilla" almondmilk may also contain secondary, non-vanilla flavor notes. She instead alleges that almondmilk characterized as vanilla means the flavor source is exclusively and/or predominately from vanilla beans. Complaint ¶ 41. This allegation has no basis in law, regulation, modern food formulation techniques, or common sense. It is as if Plaintiff alleged that an apple pie, which often contains additional flavors such as cinnamon and nutmeg to complement the main flavor of apple, is required to be labeled "apple and cinnamon and nutmeg pie" because every single flavoring present must be disclosed. Plaintiff fails to acknowledge that the designated flavor of a food is only its *main* flavor, not its *only* flavor. A vanilla almondmilk may include other, non-characterizing flavor notes such as creaminess, roundness, or sweetness, provided by other natural flavors, to make up a complex flavor profile. An almondmilk manufacturer can either list vanilla extract and these other natural flavors separately or combine them all as "natural flavor," at its option.

27

b.     Plaintiff's Laboratory Analyses are Worthless

Plaintiff introduces a table, purporting to be from a "laboratory analysis" of a sample of vanilla extract.  Complaint ¶ 17.  With the scant information provided about this analysis, it is impossible to know how the test was conducted or even what the "known authentic sample" was.  Plaintiff then proffers another table, this time from a supposed analysis of the Product, as a basis for alleging that there is an insufficient amount of vanilla extract and/or that the vanilla flavor in the Product comes predominantly from non-vanilla extract vanillin and artificial flavors.  Complaint ¶¶ 37-40.  Plaintiff does not state who conducted these analyses, what type of analyses they are, or what methodologies were followed.  No lab, scientist, or expert is identified as being associated with these tables, and the interpretations are purely those of Plaintiff's counsel.

Plaintiff does not plead —likely because she is unable to plead— that the ratios of various compounds detected in her study of the Product are not (1) within the ranges of the proportions of these various compounds that occur naturally in different vanilla bean extracts, or (2) within the ranges of measurement error in the lab analysis.  With respect to the latter point, knowing nothing about how either of the two referenced tests were conducted, there is no basis in Plaintiff's pleadings to assume that a test, conducted on a vanilla almondmilk sample, in which the total amount of flavoring is very small relative to many other ingredients that could

28

affect the analysis, is even comparable with a test conducted on a pure vanilla extract.  The products supposedly analyzed were very different – vanilla extract and vanilla almondmilk are not the same and, therefore, there should be no surprise that the analysis of each yielded different results.  Also, while the results from the analysis on the sample of vanilla extract was reported in percentages, the lab analysis on the Product gave results in "Conc. PPB w/w."  The two tests are an apples-to-oranges comparison, and Plaintiff cannot rely on her own vague and subjective interpretations of such unsubstantiated and unclear lab analyses to support the very heart of her argument.

Plaintiff also pleads baseless allegations about ingredients that were not present on the results on the Product's lab test. For example, Plaintiff alleges that because methyl-cinnamte cinnamyl alcohol, p-cresol, among other compounds were not detected by Plaintiff's test, the Product contains only a trace or "de minimis" amount of vanilla extract.  Complaint ¶¶ 38, 39.  This, however, is likely be due to (i) errors in the lab analysis, (ii) because the tested sample of almondmilk contained other ingredients, such as almonds, and not just vanilla, (iii) the analysis may not have detected the vanilla compounds due to noise from other ingredients, (iv) and/or the testing process had insufficient sensitivity to detect compounds that, if detected at all, would be detected in very small amounts.  Moreover, Plaintiff never even alleges what a "de minimis" amount of vanilla extract would be.

29

Importantly, there is no standard amount of vanilla that is required in order to be able to label a product as vanilla flavored.

There is no basis to credit the analysis as scientifically valid or reliable, let alone capable of supporting the interpretations Plaintiff puts on it.  A similar analysis that included more information than is provided here was rejected by the court in *Steele*.  2020 U.S. Dist. LEXIS 123637 at *6-7.  In *Steele,* the court noted that "[t]he fact that the analysis disclosed only the vanillin may simply show that the test was not sensitive enough to detect the markers with smaller profiles in the bean.  The test may just confirm that the vanilla flavor derives solely from vanilla extract."  *Id.*  Plaintiff's analyses are thus also discredited as a basis for alleging that there is not enough vanilla extract, or for any allegations about the source of the vanilla flavoring in a food.  Ultimately, Plaintiff's analyses are useless for any purpose other than as an admission by Plaintiff that the Product's vanilla almondmilk actually does contain vanilla bean extract, since several compounds known to be in such extract were detected.

## IV.   PLAINTIFF HAS NO STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiff, who is a past purchaser now informed of the alleged deception, does not have standing to seek injunctive relief, a point made clear by the Third Circuit in  *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices*

*& Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018).  In that case, the Third Circuit held that the plaintiff lacked Article III standing to seek injunctive relief because by virtue of filing the lawsuit and alleging deceptive marketing practice, the plaintiff was presently aware of the marketing practice and thus could not possible suffer the same alleged injury of deception again.  *See also Hall v. Welch Foods, Inc.*, No. 18-10500, 2019 U.S. Dist. LEXIS 126803, at *34 (D.N.J. July 9, 2019) (finding the plaintiff lacks standing to pursue injunctive relief because "[p]laintiff has failed to establish any reasonable likelihood of future injury from purchasing Welch's Fruit Snacks").

The Court here should apply the same reasoning as the *Hall* court which, like this case, is a New Jersey Consumer Fraud Act action alleging consumer deception and seeking prospective injunctive relief for past purchasers.  As was the case with the *Hall* plaintiffs, Plaintiff in this case "cannot be subjected to the same allegedly deceptive labeling practices of which she is already aware."  *Hall*, No. 18-10500, 2019 U.S. Dist. LEXIS at *37.

## V.   PLAINTIFF'S ANCILLARY CAUSES OF ACTION ARE IMPROPERLY PLED AND/OR INAPPROPRIATE

Plaintiff alleges several common-law causes of action that piggyback on the facts of her main claim, which are lodged under state consumer protection statutes. These ancillary claims all fail because Plaintiff's core theory of deception fails.

31

Even if Plaintiff's deception theory was viable –and it is not– , the ancillary claims would have to be dismissed because they are inadequately or improperly pled and/or simply inappropriate to the fact pattern Plaintiff alleges.

### A. The Complaint Fails to State a Claim for Breach of Warranty

Plaintiff alleges that Wakefern "warranted to plaintiff and class members that they possessed substantive, quality, organoleptic, and/or compositional attributes it did not."  Complaint ¶ 108.  These are as alleged, implied, not express, representations.  Express warranty claims must be founded on express representations – that is, a literal affirmation of fact or promise about the specific thing Plaintiff alleges to be untrue.  *See Fishman v. GE*, No. 2:12-cv-00585 (WJM), 2013 U.S. Dist. LEXIS 61389, at *14 (D.N.J. Apr. 30, 2013) ("Without the language of the warranty, and a start date and end date for the warranty, Plaintiffs cannot state a breach of express warranty claim."); *see also Parks v. Ainsworth Pet Nutrition, LLC,* 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) ("Generalized statements by a defendant …. do not support an express warranty claim if they are such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.").  The Complaint therefore fails to state an express warranty claim.

32

Furthermore, Plaintiff's claim for breach of implied warranty of merchantability must also be dismissed because Plaintiff cannot allege that the Product is not of merchantable quality.  A breach of the implied warranty of merchantability occurs only when a product is "unfit for the ordinary purposes for which such goods are used" (U.C.C. § 2-314(c)) – in this case, unfit for human consumption.  Plaintiff did not and cannot plead this.  The only other plausible argument for a breach of implied warranty of merchantability is that the Product does not "conform to the promise or affirmations of fact made on the container or label" (U.C.C. § 2-314(f)), which is just a restatement of the definition of an express warranty, and requires a literal affirmation or promise.  Again, the Complaint has not pled this; Plaintiff's case is based entirely on implied, not express, claims.

Plaintiff's Magnuson Moss Warranty Act ("MMWA") claim should also be dismissed because Plaintiff does not identify statements on the label that warranty a product free from defect, nor does anything on the labels constitute a promise that the product will meet a specified level of performance as required to state a sufficient MMWA claim.  *See* 15 U.S.C. § 2310(d).  The only statement Plaintiff identifies as constituting any warranty is that the product is called "Vanilla Almondmilk" which is not sufficient to maintain a MMWA claim because the challenged statements are merely a product description and governed by FDA

33

regulations, and not a "warranty" against a product defect over a specific time period. *See, In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1102 (C.D. Cal. 2012) (concluding that "100% Natural" is not a written warranty under the MMWA because it is not "a promise to take any remedial action" or "an assertion that the product is defect free or that it will meet a specific level of performance over a specified period of time"); *Chufen Chen v. Dunkin' Brands, Inc.,* No. 17-CV-3808 (CBA) (RER), 2018 U.S. Dist. LEXIS 234591, at \*16 (E.D.N.Y. Sep. 17, 2018). Plaintiff's MMWA claim also fails because it is merely duplicative of her other warranty claims, which are deficient in themselves for the aforementioned reasons. *See Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011) (dismissing MMWA claims based on breach of implied warranty because breach of implied warranty claims had been dismissed for lack of privity); *In re: Ford Motor Co. Ignition Switch Prods. Liability Litig.*, No. 96-1814, 1997 U.S. Dist. LEXIS 24064, 2001 WL 1266317, at \*24 (D.N.J .Sept. 30, 1997) (dismissing MMWA claims against defendant because all express and implied warranty claims against defendant had been dismissed); *Cali v. Chrysler Grp. LLC*, 2011 U.S. Dist. LEXIS 5220, at \*11 (S.D.N.Y. Jan. 18, 2011) (dismissing MMWA claims where underlying state-law claims were dismissed).

34

### B.      The Complaint Fails to State a Claim for Negligent Misrepresentation

Plaintiff's claim for negligent misrepresentation is inappropriate under these circumstances in which Plaintiff alleges misstatements by an advertiser to a mass audience of consumers engaging in arm's-length transactions.  In New Jersey, there must be an independent duty imposed by law, *i.e.*, a special relationship of confidence, to establish potential liability for negligent misrepresentation. *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 604 (D.N.J. 2016) (collecting cases); *see also Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) (requiring "special relationship" that places an exceptional duty of care on a speaker, such as where plaintiffs were investors in a limited partnership and defendant was attorney and director of an affiliated company who personally solicited plaintiffs as investors).  The duty to speak with care arises when "the relationship of the parties, arising out of a contract or otherwise, [is] such that in morals and good conscience the one has a right to rely upon the other for information."  *Kimmell*, 89 N.Y.2d at 263, quoting *International Prods. Co. v. Erie R. R. Co.*, 244 N.Y. 331, 338 (1927). To establish a claim for negligent representation the plaintiff must demonstrate "(1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and (4) the false statements were a proximate cause of

35

the plaintiff's damages." *Neuss v. Rubi Rose, LLC*, No. 16-2339 (MAS) (LHG), 2017 U.S. Dist. LEXIS 83444, at *23 (D.N.J. May 31, 2017). "Courts in this district have not hesitated to dismiss negligent misrepresentation claims by a purchaser against a manufacturer, absent allegations showing a special relationship." *Argabright*, 201 F. Supp. at 604. Applying this theory where Plaintiff, and the putative class, is a member of a mass audience of consumers, with no special relationship to Wakefern, is improper, and the claim should be dismissed.

Plaintiff's claim for negligent misrepresentation is also barred by the economic loss doctrine. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). The doctrine applies to negligent misrepresentation claims. *See State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 678 (D.N.J. 2009); *Neuss v. Rubi Rose, LLC*, No. 16-2339 (MAS) (LHG), 2017 U.S. Dist. LEXIS 83444, at *24 (D.N.J. May 31, 2017) (dismissing negligent misrepresentation claim because plaintiff did not allege any personal or property injury). In particular, the doctrine applies in this case because Plaintiff has not alleged any personal or property injury. The totality of Plaintiff's alleged injury is that the Product's alleged representations induced consumers, including Plaintiff,

to purchase the Product at a premium price.  Complaint ¶ 105-06.  Accordingly, Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine, and her seventh cause of action must be dismissed with prejudice.

### C.   The Complaint Fails to State a Claim for Fraud

Plaintiff's claim for fraudulent misrepresentation fails because they have not pled fraud with the required specificity. "It is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Lieberson*, 865 F. Supp. 2d at 538.  "Under New Jersey law, the elements of common law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Neuss*, 2017 U.S. Dist. LEXIS 83444, at *22.  The Third Circuit has advised that, at a minimum, a plaintiff must support allegations of fraud with all the essential factual background that would accompany "'the first paragraph of any newspaper story'-that is, the 'who, what, when, where and how' of the events at issue." *Lieberson*, 865 F. Supp 2d at 538 citing *In re Suprema Specialties*, 438 F.3d at 276-77.  Claims of fraud "must be pled with particularity" beyond that of a normal claim.  *Id*.

Courts have held that in false-advertising cases involving mass-marketed products, allegations that the defendant was commercially motivated to increase its

market share, to satisfy consumer desires and expectations, and to increase its sales and profits do not give rise to the necessary strong inference that the defendant had an intent to defraud.  *See Neuss,* 2017 U.S. Dist. LEXIS 83444; *Sarr*, 2020 U.S. Dist. LEXIS 25594 at 26-27, citing *In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at \*25 and *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996). Plaintiff here does not even allege this.  Her only allegation of fraudulent intent just circularly reiterates her allegation of a false or misleading statement: "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and mislead consumers."  Complaint ¶ 134.  No basis for any finding of "strong inference of intent to defraud" is pled and, therefore, dismissal of Plaintiff's fraud claim is required.

### D.    The Complaint Fails to State a Claim for Unjust Enrichment

Plaintiff's claim for unjust enrichment must fail because it is duplicative of her fraud and false advertising claims. An unjust enrichment claim is not available where it simply replicates another claim. *See Neuss*, 2017 U.S. Dist. LEXIS 83444, at \*21 ("New Jersey does not recognize unjust enrichment as an independent tort cause of action.").  This rule has been applied by New Jersey's federal courts to dismiss add-on unjust enrichment claims in cases similar to the

38

current one. *See id.; Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.,* No. 08-5380 (JLL), 2009 U.S. Dist. LEXIS 112773, at *26 (D.N.J. Dec. 3, 2009) (dismissing unjust enrichment claim on the grounds that it was duplicative).

## CONCLUSION

For the foregoing reasons, Wakefern respectfully requests that this Court grant its motion to dismiss Plaintiff's Complaint and dismiss all claims with prejudice.

39

Dated: January 15, 2021                    Respectfully submitted,

                                           */s/ Peter Sullivan*
                                           Peter Sullivan
                                           August T. Horvath (*pro hac vice*
                                           *application forthcoming*)
                                           *psullivan@foleyhoag.com*
                                           *ahorvath@foleyhoag.com*
                                           FOLEY HOAG LLP
                                           1301 Sixth Avenue, 25th Floor
                                           New York, New York 10019
                                           Tel:  (646) 927-5500
                                           Fax (646) 927-5599

                                           *Attorneys for Defendant*
                                           *Wakefern Food Corp.*

FH5225405.2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 15th day of January 2021, I caused a true and correct copy of Defendant's Motion to Dismiss Plaintiff's Complaint, together with the supporting Memorandum of Law, proposed order, and this Certificate to be served on counsel of record for Plaintiff via the ECF system.


<u>/s/ *Peter Sullivan*  </u>
Peter Sullivan

FH5225405.2