Jonathan Shub (NJ Bar # 317842020)
Kevin Laukaitis (*Pro Hac Vice*)
**SHUB LAW FIRM LLC**
134 Kings Hwy. E., 2nd Floor
Haddonfield, NJ 08033
Phone: (856) 772-7200
Fax: (856) 210-9088
Email: jshub@shublawyers.com
         klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Putative Class*
(Additional counsel on signature page)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTORIA SIDLE, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>            - against -<br><br>WAKEFERN FOOD CORP.,<br><br>                                        Defendant | 2:20-cv-16336-MCA-MAH<br><br>**FIRST AMENDED**<br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Victoria Sidle ("Plaintiff"), by and through her undersigned counsel, Shub Law Firm LLC, and Sheehan & Associates, P.C., on behalf of herself and all other persons similarly situated, brings this First Amended Class Action Complaint against Wakefern Food Corp. ("Wakefern" or "Defendant"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, investigations conducted by her attorneys.

## NATURE OF THIS CASE

1.      Wakefern Food Corp. ("Wakefern" or "Defendant") operates over three hundred ShopRite supermarkets in Connecticut, Delaware, Maryland, New Jersey, New York, and

Pennsylvania.

2.     The representations are misleading because the front label and ingredient list fail to disclose artificial flavors.

3.     Defendant manufactures, distributes, markets, labels and sells unsweetened almondmilk under its Wholesome Pantry brand purporting to be flavored exclusively and/or predominantly from vanilla beans and taste like vanilla ("Product").

4.     Under federal and state law, when "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s) by word, vignette, e.g., depiction of a fruit, or other means . . . such flavor shall be considered the characterizing flavor." See, e.g., N.J. Admin. Code § 8:21-1.3 ("The food labeling requirements of 21 CFR 101, 102, 104, and 105 are incorporated herein by reference.") incorporating 21 C.F.R. § 101.22(i).

5.     When an artificial flavor "simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor . . . [and] shall be accompanied by the word(s) 'artificial' or 'artificially flavored.'" 21 C.F.R. § 101.22(i)(2).

6.     If any characterizing flavor of a Product is not created exclusively by the identified ingredient, the Product's front label must state that the Product is flavored with either, or both of, natural or artificial flavorings.

7.     If any artificial flavor is present in the product which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as 'Artificially

Flavored.'" 21 C.F.R. § 101.22(i)(3)-(4).[1]

8.    "Vanilla" is the primary recognizable flavor identified on the Vanilla Almondmilk Product's front label under state and federal regulations, shown by the statement of "Vanilla" and the picture of cured vanilla beans and a vanilla flower.



9.    The representation as "Vanilla" is false, deceptive and misleading because the Product contains added vanillin, an artificial flavor, and the amount of real vanilla, if any, is trace or *de minimis*.

10.    Defendant failed to include the legally required "Artificially flavored" or "Artificial flavor" disclosure on the Product's label.

11.    The Product therefore violates federal and state law in multiple respects.

---

[1] New York State has adopted and incorporated in its entirety, all provisions of the Federal Food, Drug and Cosmetic Act ("FFDCA") through its Agriculture and Markets Law ("AGM") and the accompanying regulations. See Title 1, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR"). [CHANGE]

12.     Because the Product contains added flavoring ingredients that simulate and reinforce the characterizing flavor, the Product's front label is required by federal and state law to disclose that fact. 21 C.F.R. § 101.22.[2]

13.     Defendant advertises, markets, and sells the Products with label and advertising claims that the Product is flavored by its characterizing ingredient of vanilla from the vanilla plant and does not contain added flavors which simulate vanilla, when in fact the Product contains artificial flavoring.

14.     Defendant's packaging, labeling, and advertising scheme is intended to and does give reasonable consumers the impression they are buying a premium product with natural flavoring ingredients from the characterizing vanilla ingredient, instead of an artificially flavored product.

15.     Consumers prefer products without added flavor statements – "naturally flavored," "other natural flavor," "artificially flavored" – because this tells them the flavor comes from the characterizing ingredient, i.e., strawberries in strawberry shortcake. 21 C.F.R. § 101.22(i)(1).

16.     Consumers perceive such products as being more natural and healthier than other products.

17.     Defendant intentionally labels the Product to create this false perception.

18.     In addition, since the Product contains an artificial flavor, both federal and state law also require Defendant to declare this in the Product's ingredient statement. See 21 C.F.R. § 101.22.

I.     Vanillin

19.     The flavor perceived by humans as vanilla is a complex mixture of substances some

_____

[2] The laws of multiple states incorporate all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. An act or omission that would violate an FDCA regulation necessarily violates New York's Agriculture & Markets Law and California's Sherman Law  [CHANGE]

of which have their own use as individual flavoring substances.

20.    The vanilla bean is heated in the sun for weeks, soaked in alcohol solution and its flavor constituents extracted (vanilla extract).

21.    Vanillin (3-methoxy-4-hydroxybenzaldehyde) is a major component of natural vanilla extract.

22.    Vanillin is found in the form of its β-D-glucoside (glucovanillin) in green vanilla beans.

23.    The curing process, including the hydrolysis of its β-D-glucoside, leads to the release of vanillin from glucovanillin, at concentrations of 1-4% of dry weight of cured beans.

24.    The isolation of vanillin in the late 19th century and the low-cost vanillin resulted in foods purporting to contain vanilla, which either contained no vanilla or a trace or *de minimis* amount, boosted by synthetic vanillin.

25.    Vanillin confers a mainly sweet and creamy flavor to food products, with a lackluster "chemical-like" taste and odor because it lacks the other molecules in vanilla.

26.    Vanilla's unique and complex flavor is due to the hundreds of odor-active compounds such as acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

27.    While vanillin plays a significant role, it contributes less than one-third of the overall flavor/aroma impact of vanilla and is not synonymous with "vanilla."

28.    Methyl cinnamate and cinnamyl alcohol provide distinct cinnamon and creamy notes to vanilla.

29.    P-cresol contributes flavor notes described as woody and spicy.

30.    Acetovanillone provides a sweet, honey note.

31.    P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

32.    4-methoxybenzaldehyde (p-anisaldehyde) provides creamy flavor notes to vanilla.

33.    4-methoxybenzyl alcohol (p-anisyl alcohol) provides floral notes.

34.    Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[3]

35.    According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

A.    The Product Contains Added Vanillin

36.    Analytical testing of the Product performed on April 17, 2020, confirmed that Defendant adds the artificial flavoring vanillin to the Product.

37.    This was concluded because (1) the amount of vanillin was significantly greater than it would be if it were only present because of the Product containing vanilla extract as part of the "Natural Flavors" and (2) the vanillin was unaccompanied by the other flavoring components of vanilla from the vanilla plant, even though these compounds were screened for.

38.    For instance, the Product's flavoring failed to reveal detectable levels of methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, 4-methoxybnzaldehyde (p-anisaldehyde), 4-methyoxybenzyl alcohol (p-anisyl alcohol) and vanillic acid, even though these compounds were analyzed for.

39.    The absence of these aromatic compounds also means that the Product contains, at most, a trace or de minimis amount of vanilla.

---

[3] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?

B. <u>Vanillin – "natural flavor"</u>

40.     Vanillin may, though seldom is, produced through processes that yield a natural flavor consistent with the FDA definition of "natural flavor:"

> [T]he essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional. Natural flavors include the natural essence or extractives obtained from plants listed in §§ 182.10, 182.20, 182.40, and 182.50 and part 184 of this chapter, and the substances listed in § 172.510 of this chapter.

21 C.F.R. § 101.22(a)(3).

41.     This means that a "natural flavor" must be made from a natural source and through a natural process, such as distillation, roasting, heating, enzymolysis or fermentation.

42.     While enzymatic reactions exist to convert eugenol (and other natural sources) to vanillin, these methods are seldom used.

43.     For instance, the rate of conversion of eugenol to vanillin is very low, in part due to the toxicity and limited water solubility of eugenol.

C. <u>Artificial Flavor Vanillin – 101.22</u>

44.     Artificial flavor is defined as any flavoring from a synthetic source or made through an artificial process. 21 C.F.R. § 101.22(a)(1).

45.     The Product contains the synthetic flavoring vanillin.

46.     The sources of vanillin are petroleum (guaiacol), lignin (tree pulp), eugenol or ferulic acid.

47.     Guaiacol is the source of 85% of vanillin, and obtained from the synthetic petrochemicals, benzene and propylene, whose industrial source is petroleum.

48.     Converting guaiacol to vanillin begins with condensation of guaiacol with glyoxylic

acid.

49.    The processes include chemical reactions such as decarboxylation and aromatic substitution.

50.    Vanillin is also derived from lignin, which is present in sulfite wastes of the wood pulp industry.

51.    These sulfite wastes are not considered natural source materials because they contain chemicals that were used in the processing of wood pulp.

52.    Lignin is difficult to degrade by natural means, which is why production of vanillin from lignin entails chemical processes.

53.    Lignin is degraded either with sodium hydroxide or with calcium hydroxide solution and simultaneously oxidized in air in the presence of catalysts.

54.    When these chemical reactions are completed, the solid wastes and vanillin are removed from the acidified solution with a solvent, e.g., butanol or benzene, and reextracted with sodium hydrogen sulfite solution.

55.    The vanillin is subjected to reacidification with sulfuric acid followed by vacuum distillation, and several recrystallization cycles.

56.    Vanillin derived from lignin is an artificial flavor because the sulfite wastes of wood pulp are not a natural source, and the chemical reactions used to convert it to vanillin are not natural processes.

57.    Eugenol, the major constituent of clove oil, has been used a source of vanillin.

58.    The first method of converting eugenol to vanillin requires isomerization of eugenol to isoeugenol under alkaline conditions, followed by side-chain cleavage to vanillin and two-carbon moiety under acidic conditions.

59.    The second method of converting eugenol to vanillin involves the intermediary of coniferyl alcohol which is oxidized to ferulic acid.

60.    The ferulic acid is subjected to high heat of 800 degrees Celsius, high amounts of pressure, 20 atmospheric pressure units, and chemical catalysts, sodium hydroxide or sodium chloride.

61.    The high heat, high pressure and chemical catalysts are outside of what is considered a natural process for producing a natural flavor.

62.    Vanillin made through any of these methods is required to be declared as an artificial flavor because it is the product of non-natural processes and/or the starting material is a synthetic substance.

63.    The added vanillin is an artificial flavor that simulates the characterizing flavor, which means the front label is required to disclose this fact through the statement, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

D.    Added Vanillin is Always an Artificial Flavor in Vanilla Flavors

64.    Natural vanillin is not isolated commercially, because it is used as part of "vanilla extract," which will be listed on an ingredient list.

65.    Regardless of whether vanillin can fit within the definition of a natural or artificial flavor, the FDA has confirmed that the only natural vanillin is from vanilla beans whose flavor it simulates.

66.    Therefore, vanillin from non-vanilla sources is required to be disclosed as an artificial flavor or "vanillin."

II.    Ingredient List Misleading

67.    The Product's ingredient list violates federal and state law because it misleadingly conceals the added vanillin as part of the generic "natural flavor" instead of using the specific, non-generic name of the ingredient – "vanillin" or "artificial flavor." 21 C.F.R. § 101.4(b)(1).



**INGREDIENTS:**    ALMONDMILK    (FILTERED    WATER, ALMONDS), NATURAL FLAVOR, SEA SALT, GELLAN GUM, XANTHAM    GUM,    SUNFLOWER    LECITHIN,    CALCIUM CARBONATE,    VITAMIN    E    ACETATE,    ZINC    GLUCONATE, VITAMIN A PALMITATE, VITAMIN B12, VITAMIN D2.

68.    Even if reasonable consumers were to investigate Defendant's claims on the Product's front label by scrutinizing the ingredient statement on the back, consumers would still be unable to verify whether the Product contained the artificial flavor of vanillin.

69.    Even if the added vanillin used by Defendant in the Product was made from a natural source and through a natural process, the Product would still be required to identify this compound as an artificial flavor, since the only natural vanillin is from the vanilla plant.

70.    Nevertheless, the vanillin used by Defendant is not only <u>not</u> from the vanilla plant, but it is from an artificial source and made through an artificial process.

71.    Although the vanillin Defendant to simulate the Product's characterizing vanilla flavor is vanillin from an artificial petrochemical – Defendant pretends otherwise, conflating the natural and artificial flavoring and deceiving consumers.

72.    Because the Product contains an artificial flavor, both federal and state law require

the Product's front and back label to inform consumers that the Product contains artificial flavoring. 21 C.F.R. § 101.22(c).

73.    Plaintiff and Class Members purchased the Product because they reasonably believed it was flavored only with natural ingredients and did not contain artificial flavors.

74.    As reported in Forbes Magazine, 88% of consumers polled indicated they would pay more for food perceived as natural or healthy.

75.    Reasons for eschewing artificial flavors include a desire to avoid synthetic ingredients which have been associated with detrimental health effects.[4]

76.    Flavors are often the most valued part of a food, and food with natural flavors are considered higher quality by consumers.

77.    "All demographics [of consumers] from Generation Z to Baby Boomers – say they would pay more" for foods with no artificial flavors.[5]

78.    Products made with natural instead of artificial flavors are "more popular than ever and approaching performance parity with their synthetic counterparts."[6]

79.    Surveys have consistently found that at least seven out of ten consumers avoid artificial flavors.[7]

80.    Defendant's marketing is designed to – and does – deceive, mislead, and defraud Plaintiff and consumers.

81.    Defendant misrepresented the Product through affirmative statements and omissions.

82.    Defendant sold more of the Product and at higher prices than it would have in absence

---

[4] Donna Berry, Playing the natural flavor game, Food Business News, Jan 1, 2018.
[5] Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.
[6] Kimberly Decker, Advances in natural flavors, Food & Beverage Insider Oct 12, 2020.
[7] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

of this misconduct, resulting in additional profits at the expense of consumers.

83.    The value of the Product that Plaintiff purchased, used and/or consumed was materially less than its value as represented by Defendant.

84.    Had Plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

85.    As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $ 3.99 per 64 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## **Delayed Discovery**

86.    Nevertheless, Plaintiff and consumers would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law.

87.    Furthermore, Defendant's labeling practices and nondisclosures, in particular failing to identify the artificial flavor on the front label and the ingredient list, impeded Plaintiff and the Class Members' abilities to discover the deceptive and unlawful labeling of the Product throughout the Class Period.

## **Jurisdiction and Venue**

88.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

89.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal

diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

90.    Plaintiff Victoria Sidle is a citizen of New Jersey who seeks to represent a class of all purchasers of the Product in New Jersey and Pennsylvania.

91.    Defendant Wakefern Food Corp. is a New Jersey corporation with a principal place of business in Keasbey, Middlesex County, New Jersey and is a citizen of New Jersey.

92.    "Minimal diversity" exists because the proposed class consists of persons who are citizens of a state different than that of Defendant.

93.    Upon information and belief, sales of the Product in New Jersey and Pennsylvania exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

94.    Venue is proper in this judicial district because Plaintiff resides in this District and Defendant is an entity with the capacity to sue and be sued in its common name under applicable law and is deemed to reside in this judicial district because Defendant is subject to the court's personal jurisdiction in this State with respect to this action. *See* 28 U.S.C. § 1391(b)(1); 28 U.S.C. § 1391(c)(2).

95.    Venue is further supported because many class members reside in this District.

## Parties

96.    Plaintiff Victoria Sidle is a citizen of New Jersey, Maywood, Bergen County.

97.    Defendant Wakefern Food Corp. is a New Jersey corporation with a principal place of business in Keasbey, New Jersey, Middlesex County and is a citizen of New Jersey.

98.    During the relevant statutes of limitations for each cause of action alleged, Plaintiff purchased the Product within her district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

99.    Plaintiff Sidle purchased the Product on a weekly basis for no less than the past two

years, at Defendant's ShopRite store at 220 W Passaic St, Rochelle Park, NJ 07662.

100.   Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use and relied upon the front label claims – "vanilla" and images of the vanilla bean and vanilla flower, expected a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans and did not expect the Product to contain artificial flavor.

101.   Plaintiff bought the Product because she expected it would contain only natural flavoring ingredients and not contain artificial flavors, because the front label and ingredient list failed to disclose the presence of artificial flavor, and she expected to see such statements based on her prior experience purchasing foods and beverages.

102.   Plaintiff was deceived by and relied upon the Product's deceptive labeling.

103.   Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

104.   The Product was worth less than what Plaintiff and consumers paid for it and they would not have paid as much absent Defendant's false and misleading statements and omissions.

105.   Plaintiff intends to, seeks to, and will purchase the Product again when they can do so with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

106.   The class will consist of all purchasers of the Product who reside in New Jersey and Pennsylvania during the applicable statutes of limitations.

107.   Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

108.   Common questions of law or fact predominate and include whether Defendant's

representations were and are misleading and if Plaintiff and class members are entitled to damages.

109.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

110.   Plaintiff is an adequate representative because her interests do not conflict with other members.

111.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

112.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

113.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

114.   Plaintiff seeks class-wide injunctive relief because the practices continue.

## COUNT I
## Violation of New Jersey Consumer Fraud Act ("CFA") NJSA § 56:8-1, et seq.

115.   Plaintiff incorporates by reference all preceding paragraphs.

116.   Plaintiff and class members desired to purchase and consume products which were as described and marketed by Defendant and expected by reasonable consumers, given the product type.

117.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

118.   Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

119.   The amount and proportion of the characterizing (natural) component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect

artificial flavor where the front label and ingredient list fail to disclose this material fact.

120.   Plaintiff relied on the statements, omissions and representations of Defendant, and Defendant knew or should have known the falsity of same.

121.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT II
## Negligent Misrepresentation

122.   Plaintiff incorporates by reference all preceding paragraphs.

123.   Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

124.   The amount and proportion of the characterizing (natural) component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial flavor where the front label and ingredient list fail to disclose this material fact.

125.   Defendant had a duty to disclose the added artificial flavor and tell consumers the Product did not taste like vanilla because it lacked the compounds besides vanillin which provide a characteristic vanilla taste.

126.   This duty is based on Defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type – one of the East Coast's oldest chain of grocery stores.

127.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, a well-known and respected brand or entity in this sector.

128.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

129.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT III
### Breaches of Express Warranty

130.  Plaintiff incorporates by reference all preceding paragraphs.

131.  Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

132.  The amount and proportion of the characterizing (natural) component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial flavor where the front label and ingredient list fail to disclose this material fact.

133.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

134.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT IV
### Breaches of Implied Warranty of Merchantability

135.  Plaintiff incorporates by reference all preceding paragraphs.

136.  The Product was manufactured, labeled and sold by Defendant or at its express directions and instructions, and warranted to Plaintiff and class members that it possessed substantive, quality, organoleptic, and/or compositional attributes it did not, *viz*, only natural flavoring ingredients and did not contain artificial flavor.

137.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

138.  This duty is based, in part, on Defendant's position as one of the most recognized

companies in the nation in this sector.

139.  Plaintiff provided or will provide notice to Defendant, its agents, representatives, and their employees.

140.  Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

141.  The Product did not conform to its affirmations of fact and promises due to Defendant's actions and were not merchantable.

142.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

**COUNT V**
**Breaches of Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.***

143.  Plaintiff incorporates by reference all preceding paragraphs.

144.  The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to Plaintiff and class members that it possessed substantive, quality, organoleptic, and/or compositional attributes it did not – only natural flavoring and not artificial flavor.

145.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

146.  This duty is based, in part, on Defendant's position as one of the most recognized companies in the nation in this sector.

147.  Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

148.  Defendant received notice and should have been aware of these misrepresentations

due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

149.  The Product did not conform to its affirmations of fact and promises due to Defendant's actions and were not merchantable.

150.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT VI
### Fraud

151.  Plaintiff incorporates by reference all preceding paragraphs.

152.  Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

153.  The amount and proportion of the characterizing (natural) component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial flavor where the front label and ingredient list fail to disclose this material fact.

154.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

155.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT VII
### Unjust Enrichment

156.  Plaintiff incorporates by reference all preceding paragraphs.

157.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## JURY DEMAND

158.  Plaintiff demands a jury trial on all issues.

## PRAYER FOR RELIEF

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 5, 2021

Respectfully submitted,

**SHUB LAW FIRM LLC**
*/s/ Jonathan Shub*
Jonathan Shub
*jshub@shublawyers.com*
Kevin Laukaitis
*klaukaitis@shublawyers.com*
134 Kings Hwy. E, 2nd Floor
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile: (856) 210-9088

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (Pro Hac Vice Pending)
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*