## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHAMBERS OF
MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST. ROOM 4066
NEWARK, NJ 07101
973-297-4903

September 29, 2021

VIA ECF

### LETTER ORDER

Re:     Victoria Sidle v. Wakefern Food Corp.
        Civil Action No. 20-16336

Dear Litigants:

Before the Court is Defendant Wakefern Food Corp.'s ("Defendant" or "Wakefern") Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 11. Plaintiff Victoria Sidle ("Plaintiff" or "Sidle") opposes the Motion. ECF No. 12. For the reasons explained below, Defendant's Motion is **GRANTED**.

I.     BACKGROUND[1]

This putative class action arises out of Defendant's alleged mislabeling of an almond milk product that it produces and sells. See generally Am. Compl.

Defendant is a supermarket operator that manufactures, distributes, markets, labels, and sells an "unsweetened almondmilk under its Wholesome Pantry brand purporting to be flavored exclusively and/or predominantly from vanilla beans and taste like vanilla." Id. ¶¶ 1, 3. The front label of the product contains the words "Almondmilk Unsweetened Vanilla" and an image of "cured vanilla beans and a vanilla flower." Id. ¶ 8. On the back of the product is an ingredient list that includes the term "natural flavor." Id. ¶ 67. According to the Amended Complaint, the representations on the front label and ingredient list are false, deceptive, and misleading because they fail to disclose that the product contains added vanillin and that "the amount of [any] real vanilla" in the product is "de minimis."[2] See id. ¶¶ 9-10. While Plaintiff acknowledges that vanillin can be derived from natural sources, she alleges that analytical testing performed on April 17, 2020, confirmed that the product contains artificial vanillin. Id. ¶¶ 36, 40-41.

---

[1] The facts are drawn from the First Amended Class Action Complaint (the "Amended Complaint"). ECF No. 10.

[2] Vanillin is a "major component of natural vanilla extract." Id. ¶ 21. The Amended Complaint asserts that "[w]hile vanillin plays a significant role, it contributes less than one-third of the overall flavor/aroma impact of vanilla and is not synonymous with 'vanilla.'" Id. ¶ 27. Artificial vanillin accounts for at least 85% of vanillin. See id. ¶ 47. While vanillin can be produced from certain natural sources, such as eugenol, such "methods are seldom used." Id. ¶ 42.

Plaintiff purchased the almond milk product from Defendant's Rochelle Park, New Jersey store on a weekly basis for at least two years. Id. ¶ 99. She alleges that she bought the product because she "believed it was flavored only with natural ingredients and did not contain artificial flavors." Id. ¶ 73. Plaintiff further asserts that had she "known the truth" about the source of the vanilla flavor, she would not have purchased the product or would have paid less for it. Id. ¶ 84.

Plaintiff commenced this action on November 17, 2020, on behalf of herself and all similarly situated purchasers of the product who reside in New Jersey and Pennsylvania. ECF No. 1. After Defendant moved to dismiss the initial Class Action Complaint, ECF No. 7, Plaintiff filed the Amended Complaint on February 5, 2021, ECF No. 10. The Amended Complaint asserts seven causes of action: (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1 et seq. (the "CFA"); (2) negligent misrepresentation; (3) breach of express warranty; (4) breach of the implied warranty of merchantability; (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq. (the "MMWA"); (6) fraud; and (7) unjust enrichment. Id. ¶¶ 115-57.[3] The Amended Complaint seeks, inter alia, injunctive relief and damages. Id. at 10. On February 19, 2021, Defendant moved to dismiss the Amended Complaint, ECF No. 11, which Plaintiff opposed, ECF No. 12.

## II.   LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal is inappropriate simply because "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III.   ANALYSIS

### A.  Violation of the CFA (Count I)

Defendant argues that Count I must be dismissed because Plaintiff has failed to plead that Defendant engaged in unlawful conduct under the CFA. See ECF No. 11 at 20-32. The Court agrees.

---

[3] Defendant alleges that the Amended Complaint also improperly asserts a claim for violation of regulations promulgated by the Food and Drug Administration (the "FDA"). See ECF No. 11 at 10-14. To the extent Plaintiff brings any such claim, it is dismissed "because the right to enforce the Food, Drug, and Cosmetic Act rests exclusively with the FDA." Twohig v. Shop-Rite Supermarkets, Inc., No. 20-763, 2021 WL 518021, at *7 (S.D.N.Y. Feb. 11, 2021) (citing 21 U.S.C. § 337(a)). In any event, as discussed below, because the Amended Complaint does adequately allege that the product actually contains artificial vanillin, Plaintiff has not pled a violation of the FDA regulations cited in the Amended Complaint. See, e.g., 21 U.S.C. § 101.22(i)(2) (requiring label to include terms "'artificial' or 'artificially flavored'" if the product contains "any artificial flavor which simulates, resembles or reinforces the characterizing flavor").

"To state a prima facie case under the CFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." Payan v. GreenPoint Mortg. Funding, Inc., 681 F. Supp. 2d 564, 572 (D.N.J. 2010) (citing Bosland v. Warnock Dodge, Inc., 197 N.J. 543 (2009)).  The CFA recognizes three general categories of unlawful conduct: "affirmative acts, knowing omissions, and regulation violations." Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) (internal citation and quotation marks omitted). "To constitute consumer fraud … the business practice in question must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer." Katz v. Ambit Ne., LLC, No. 20-01289, 2021 WL 2680184, at *8 (D.N.J. June 29, 2021) (internal citation and quotation marks omitted).  CFA claims must satisfy Federal Rule of Civil Procedure 9's "heightened pleading" standard, which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Hammer v. Vital Pharms., Inc., No. 11-4124, 2012 WL 1018842, at *4 (D.N.J. Mar. 26, 2012); Fed. R. Civ. P. 9(b).

Plaintiff alleges that Defendant engaged in unlawful conduct under the CFA through an affirmative act and a knowing omission. ECF No. 12 at 8.  Under the CFA, an affirmative act does "'not require proof of intent to mislead.'" Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C., 655 F. Supp. 2d 473, 505 (D.N.J. 2009) (quoting Vagias v. Woodmont Properties, L.L.C., 384 N.J. Super. 129, 133 (App. Div. 2006)).  Rather, "'[o]ne who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive.'" Id. at 505 (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 605 (1997)).

Here, Plaintiff has failed to allege an affirmative act.  According to Plaintiff, the product's front label, which contains the word "vanilla" accompanied by an image of vanilla beans and a vanilla flower, is misleading because the product contains artificial flavor and little to no real vanilla. Am. Compl. ¶ 9; ECF No. 12 at 8.  The Amended Complaint further alleges that the product purports "to be flavored exclusively and/or predominantly from vanilla beans and taste like vanilla." Am. Compl. ¶ 3.  Plaintiff's arguments here are strikingly similar to those raised in other cases challenging the use of the term "vanilla" in product descriptions or advertising.[4]  As one court noted, "[i]n nearly all of these cases, the district court ultimately found that the plaintiffs had failed to state a viable claim for relief." Cosgrove v. Or. Chai, Inc., No. 19-10686, 2021 WL 706227, at *1 (S.D.N.Y. Feb. 21, 2021) (collecting cases).

One such case, Budhani v. Monster Energy Co., involved a vanilla-flavored espresso energy drink with a front label containing, inter alia, the words "Vanilla Cream" and "an image of the vanilla flower." No. 20-1409, 2021 WL 1104988, at *1 (S.D.N.Y. Mar. 22, 2021).  Similar to Plaintiff here, the plaintiff in Budhani argued that the label was misleading under a state consumer fraud statute because it: (1) suggested that the product contained extract from vanilla bean, but in fact only contained "'a de minimis amount of vanilla from real vanilla beans from the vanilla plant'"; (2) suggested that vanilla beans "predominantly or exclusively" provided the product's flavor, while other ingredients in fact "contribute to the vanilla taste"; and (3) failed to disclose

---

[4] One of Plaintiff's counsel has filed nearly 100 lawsuits challenging the labeling of vanilla products.  See Twohig, 2021 WL 518021, at *5 n.5 (citing Debra Cassens Weiss, Lawyer has filed nearly 100 consumer lawsuits over vanilla labeling, ABA Journal (Dec. 23, 2020), available at https://www.abajournal.com/news/article/lawyer-has-filed-nearly-100-consumer-lawsuits-over-vanilla-labeling).

that the product contained artificial vanilla from vanillin and other artificial sources.  Id.[5]  The Court dismissed the plaintiff's claim, finding "that a reasonable consumer could not draw the conclusion from the Product labeling that the vanilla bean (or vanilla bean extract) was the predominant or exclusive source of the vanilla flavor in the Product."  Id. at *8.  In so finding, the Court explained:

> The labelling itself makes no representation with respect to the sources of the vanilla flavoring or whether, despite vanilla bean being contained in the Product, all or most of the vanilla flavor comes from vanilla beans. They simply indicate that the Product contains the ingredient vanilla bean extract. The Product's label makes no representation about the quantity of such vanilla compared to other flavoring compounds. In fact, the ingredient list indicates that the product contains "natural flavors," and does not state that those natural flavors are derived mostly or exclusively from a vanilla bean. . . . The label does not foreclose that other compounds besides extract from vanilla beans contribute to the vanilla flavor. A reasonable consumer therefore would have no right to assume that the Product's vanilla flavor is derived predominantly from one ingredient as opposed to another.

Id.

The Court reaches a similar conclusion in this case.  As Defendants point out, the product makes no affirmative statements about the source of the vanilla flavor and the "vanilla" language and image of the vanilla bean and flower merely identify the flavor, as opposed to the source of the vanilla.  The most that the word "vanilla" and the vanilla bean and flower imagery suggest is that the almond milk contains some amount of vanilla beans or extract, which Plaintiff here concedes is possible.  See Am. Compl. ¶¶ 9, 39 (alleging that the product may actually contain vanilla).  The front label does not make any representation about the source of the vanilla flavor or the quantity of vanilla as compared to other ingredients.  Budhani, 2021 WL 1104988, at *8; Am. Compl. ¶ 39.  As in Budhani, the almond milk product's ingredients list "indicates that the product contains 'natural flavors,' and does not state that those natural flavors are derived mostly or exclusively from a vanilla bean."  Id.

Other courts evaluating vanilla labeling claims have reached similar conclusions.  See Pichardo v. Only What You Need, Inc., No. 20-493, 2020 WL 6323775, at *1, 5 (S.D.N.Y. Oct. 27, 2020) (finding vanilla-flavored beverage label containing "a vanilla flower vignette and the words 'Smooth Vanilla'" not materially misleading because "reasonable consumers associate the word 'vanilla' with a flavor, not with an ingredient" and "the use of the term vanilla [does not] imply that there are no other flavoring ingredients"); Dashnau v. Unilever Mfg. (US), Inc., No. 19-10102, 2021 WL 1163716, at *1, 6 (S.D.N.Y. Mar. 26, 2021) (concluding that vanilla-flavored ice cream bar label "describ[ing] the Product as 'Vanilla Bean Ice Cream'" was not misleading

---

[5] Although Budhani involved claims under New York's consumer fraud statute, see 2021 WL 1104988, at *1, courts in this District have noted that "[t]he capacity to mislead is the prime ingredient of . . . consumer fraud [under both the CFA and New York statute]," Argabright v. Rheem Mfg. Co., 201 F. Supp. 3d 578, 605 (D.N.J. 2016) (internal citation and quotation marks omitted).  Unlike the CFA, however, claims brought under the New York statute are subject to Rule 8's "more liberal pleading standard."  Id. at 607.

because label made a flavor, not ingredient, representation and did not "suggest that vanilla beans are the only source of vanilla flavoring, or that the flavor from vanilla beans constitutes a certain percentage of the total vanilla flavor").

Furthermore, the Amended Complaint does not adequately allege that the vanillin in the product was derived from artificial sources. While Plaintiff avers that analytical testing showed that the product contains artificial vanillin and does not have certain "other flavoring components of vanilla from the vanilla plant," these generalized allegations fall short of Rule 9's heightened pleading standard, which requires claims of fraud to be pled with "particularity." Id. ¶¶ 36-39; Fed. R. Civ. P. 9(b).[6] Thus, the Court finds that Plaintiff has not adequately pled an affirmative act.

In addition, the Amended Complaint fails to allege an actionable omission. To plead a knowing omission under the CFA, "[P]laintiff must show that [D]efendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment." Katz, 2021 WL 2680184, at *6 (internal citation and quotation marks omitted). Here, Plaintiff contends that Defendant's failure to disclose that the product contained artificial flavoring on the front label and ingredient list constitutes a knowing omission. See, e.g., Am. Compl. ¶¶ 10, 67-72; ECF No. 12 at 10. As explained above, however, the Amended Complaint, as currently pled, does not sufficiently allege that the vanillin in the product was actually derived from artificial sources. Therefore, the Court finds that Plaintiff has not pled a knowing omission.[7]

### B. Negligent Misrepresentation (Count II)

Defendant argues that the negligent misrepresentation claim must be dismissed because the Amended Complaint does not allege a special relationship between the parties. ECF No. 11 at 36-37. The Court agrees.

To state a claim for negligent misrepresentation, "a plaintiff must prove that the defendant negligently made an incorrect statement upon which the plaintiff justifiably relied." Argabright v. Rheem Mfg. Co., 201 F. Supp. 3d 578, 603 (D.N.J. 2016). Although an omission may form the basis of a negligent misrepresentation claim, "a plaintiff may not bring such a claim unless the breaching party owes an independent duty imposed by law." Id. at 603-04 (internal citations and quotation marks omitted). "Courts in this district have not hesitated to dismiss negligent

---

[6] Indeed, the Amended Complaint here contains even less detail about the analytical testing's method and results than the complaint considered, and ultimately dismissed, by the Budhani court under Rule 8. See Budhani, 2021 WL 1104988, at *3 n.2. The Budhani complaint included results from a Gas Chromatography-Mass Spectrometry test allegedly showing that the product was predominantly flavored by artificial sources. Id. at *1. The Amended Complaint, by contrast, contains no such information for the Court to evaluate.

[7] Plaintiff also argues that the front label is misleading because the product does not taste like vanilla. ECF No. 12 at 12-15. This argument is unavailing. While Plaintiff relies on paragraphs 25 and 100 of the Amended Complaint to support her contention, a careful reading of these paragraphs reveals that neither alleges with the requisite particularity that the product itself does not taste like vanilla. Id. at 13. Paragraph 25 generally alleges that "[v]anillin confers a mainly sweet and creamy flavor to food products, with a lackluster 'chemical-like' taste and odor because it lacks the other molecules in vanilla." Am. Compl. ¶ 25. Similarly, paragraph 100 alleges only, in relevant part, that Plaintiff expected the product to have "a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans." Id. ¶ 100. Thus, contrary to Plaintiff's assertions, the Amended Complaint does not adequately allege that the product does not have a vanilla taste.

misrepresentation claims by a purchaser against a manufacturer, absent allegations showing a special relationship." Id. at 604.

Here, the Amended Complaint is devoid of any non-conclusory allegations from which the Court could infer a special relationship between the parties. The Amended Complaint asserts that Defendant had a duty to disclose that the product contained artificial vanillin "based on Defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type." Am. Compl. ¶¶ 125-26; ECF No. 12 at 21-22. The Court, however, need not credit a "formulaic recitation of the elements of a cause of action," Bell Atl. Corp., 550 U.S. at 555, and similar threadbare assertions of a special relationship have been rejected in other vanilla labeling cases, see, e.g., Twohig, 519 F. Supp. 3d at 154 (dismissing negligent misrepresentation claim where plaintiffs alleged "in a conclusory manner . . . that Defendant 'held itself out as having special knowledge and experience in the production, service and/or sale of the product type'"); Budhani, 2021 WL 1104988, at *10 (same). Accordingly, Count II is dismissed.[8]

### C. Breach of Express Warranty (Count III)

Defendant next argues that Count III should be dismissed because the Amended Complaint does not allege that the almond milk product contained an express warranty. ECF No. 11 at 33-34. The Court agrees.

To state a claim for breach of express warranty under New Jersey law, a plaintiff "must allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." Fishman v. Gen. Elec. Co., No. 12-00585, 2013 WL 1845615, at *5 (D.N.J. Apr. 30, 2013).

Here, Plaintiff generally claims that "Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product" but does not identify any specific representations made by Defendant sufficient to support this assertion. Am. Compl. ¶ 131; see also ECF No. 12 at 22. As set forth in detail above, the product does not include any representation about the source of its vanilla flavor or the quantity of any specific ingredient. Furthermore, and in any event, the Amended Complaint fails to sufficiently allege that the product contains artificial vanilla. Because Plaintiff has failed to identify any statements that amount to an express warranty to which the product does not conform, Count III is dismissed.

### D. Breach of Implied Warranty of Merchantability (Count IV)

Plaintiff's claim for breach of the implied warranty of merchantability fails for similar reasons. "Under an implied warranty of merchantability, a manufacture[r] warrants to deliver a product that is reasonably suitable for the ordinary uses it was manufactured to meet." Greene v. BMW of N. Am., No. 11-04220, 2012 WL 5986461, at *5 (D.N.J. Nov. 28, 2012) (internal citation and quotation marks omitted). Under the New Jersey law, "[g]oods to be merchantable must," inter alia: (1) "pass without objection in the trade under the contract description"; (2) "[be] fit for the ordinary purposes for which such goods are used"; and (3) "conform to the promises or

---

[8] Because the Court finds that the Amended Complaint fails to allege a special relationship, it need not reach Defendant's argument that the claim is barred by the economic loss doctrine, as well. ECF No. 11 at 37-38.

affirmations of fact made on the container or label if any." N.J. Stat. Ann. § 12A:2-314(2)(a),(c),(f).

Here, Plaintiff asserts that the product "was not capable of passing without objection in the trade" because its vanilla flavor was derived primarily from artificial sources. ECF No. 12 at 23; see also Am. Compl. ¶ 136. She further alleges that the product failed to conform to the label's alleged affirmations and promises that the product only contained natural flavoring ingredients.[9] Am. Compl. ¶¶ 136, 141. These allegations are insufficient to state a claim for two reasons. First, as explained in the analysis of the CFA claim, the Amended Complaint does not adequately allege that the almond milk product in fact contained artificial vanilla flavor. Second, as a result, the product's label does not contain any affirmations or promises to which it does not conform. Therefore, Count IV is dismissed.

### E. Breach of the MMWA (Count V)

Because Plaintiff's state law breach of warranty claims fail, her MMWA claim also fails. Under the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring" a civil action for damages or other relief. 15 U.S.C.A. § 2310(d). "Claims under the MMWA depend upon the disposition of the underlying state law warranty claims. . . . Thus, if there exists no actionable [state law] warranty claim, there can be no violation of the MMWA." Martinez v. Ethicon, Inc., No. 18-17570, 2019 WL 4345867, at *3 (D.N.J. Sept. 12, 2019). Here, because the underlying breach of express warranty and breach of the implied warranty of merchantability claims have been dismissed, the Court will dismiss the MMWA claim.

### F. Fraud (Count VI)

Defendant argues that Count VI must be dismissed because Plaintiff has failed to plead common law fraud with the requisite specificity. ECF No. 11 at 38-40. The Court agrees.

Under New Jersey law, "[t]he five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). Claims of fraud must be pled with "particularity," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Supreme Court has explained that the word "generally" under Rule 9 "is a relative term" and "is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 . . . does not give [a party] license to evade the less rigid—though still operative—strictures of Rule 8." Iqbal, 556 U.S. 662, 686-87 (2009).

Here, in addition to failing to sufficiently plead that Defendant materially misrepresented the source of the product's vanilla flavor, as explained above, Plaintiff also failed to adequately plead that Defendant acted with fraudulent intent. The Amended Complaint alleges, in a conclusory manner, that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither

---

[9] Plaintiff concedes that the Amended Complaint does not allege that the product is "unfit for human consumption," which is the product's ordinary purpose. ECF No. 12 at 23.

true nor accurate and misled consumers." Am. Compl. ¶ 154.  Courts in other vanilla labeling cases have found identical allegations too conclusory to establish intent.  See Twohig, 519 F. Supp. 3d 154 (S.D.N.Y. 2021) (dismissing New York fraud claim in vanilla soymilk labeling case because "[t]he complaint only contains the conclusory allegation that 'Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers'").  The Court reaches a similar conclusion here and finds that the Amended Complaint neither satisfies Rule 8 nor Rule 9.  Accordingly, Count VI is dismissed.

### G.  Unjust Enrichment (Count VII)

Finally, Defendant argues that Count VII must be dismissed because the Amended Complaint does not allege a cognizable claim for unjust enrichment.  ECF No. 11 at 40.  The Court agrees.

To state a claim for unjust enrichment, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it."  Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 711 (D.N.J. 2011) (internal citation and quotation marks omitted).  "New Jersey does not recognize unjust enrichment as an independent tort cause of action."  Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc., No. 08-5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (emphasis in original).  "Rather, in the tort setting, 'an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched).'"  Id. (quoting Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 936 (3d Cir. 1999)).

Here, the Amended Complaint alleges that "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members."  Am. Compl. ¶ 157.  This allegation sounds in tort.  See Schechter v. Hyundai Motor Am., No. 18-13634, 2019 WL 3416902, at *11 (D.N.J. July 29, 2019) (dismissing unjust enrichment claim where "Plaintiff only alleges tort-based claims which arise from Defendants' alleged 'unlawful, unjust and inequitable conduct,' i.e., their failure to disclose and concealment of the Powertrain Defect"); Warma Witter Kreisler, Inc., 2009 WL 4730187, at *7 ("Plaintiff's theory of recovery is based on the assertion that it was misled by Samsung as to the fitness of the printer and that as a result of Samsung's tortious conduct, Plaintiff is allowed to recover damages. Such allegations sound in tort.").  As such, Count VII is dismissed.

**IV.    CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss, ECF No. 11, is **GRANTED**. To the extent Plaintiff can cure any of the deficiencies identified herein, she may file an amended pleading within thirty (30) days of the date of this Order.[10]

**SO ORDERED.**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[10] Because the Amended Complaint fails to state a claim, the Court need not reach Defendant's argument that Plaintiff lacks standing to seek injunctive relief.  See ECF No. 11 at 32-33.